# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 1, 2002 Session

## JULIA BETH CREWS  v.  BUCKMAN LABORATORIES INTERNATIONAL, INC.

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. CT-001642-00     Hon. D'Army Bailey, Judge**

---

### No. W2000-01834-SC-R11-CV - Filed May 24, 2002

---

The sole issue in this case is whether an in-house lawyer can bring a common-law claim for retaliatory discharge when she was terminated for reporting that her employer's general counsel was engaged in the unauthorized practice of law.  The trial court dismissed the plaintiff's complaint for failure to state a claim, and the dismissal was affirmed by the Court of Appeals.  We hold that in-house counsel may bring a common-law action for retaliatory discharge resulting from counsel's compliance with a provision of the Code of Professional Responsibility that represents a clear and definitive statement of public policy.  Accordingly, the judgment of the Court of Appeals is reversed, and this case is remanded for further proceedings.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Reversed; Case Remanded**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Donald A. Donati and William B. Ryan, Memphis, Tennessee, for the appellant, Julia Beth Crews.

Frederick J. Lewis, Thomas L. Henderson, and Whitney K. Fogerty, for the appellee, Buckman Laboratories International, Inc.

David A. Burkhalter, II and Ronald A. Rayson, Knoxville, Tennessee, and R. Sadler Bailey, Memphis, Tennessee, for Amicus Curiae, Tennessee Trial Lawyers Association.

### OPINION

### FACTUAL BACKGROUND

We granted permission to appeal to review whether the trial court should have granted a motion to dismiss a complaint under Tennessee Rule of Civil Procedure 12.02(6) for the failure to

state a common-law claim for retaliatory discharge. The plaintiff, Ms. Julia Beth Crews, was allegedly discharged from her position as in-house counsel for defendant Buckman Laboratories International, Inc. ("Buckman") for reporting that Buckman's general counsel was engaged in the unauthorized practice of law. Because a Rule 12.02(6) motion to dismiss admits the truth of the complaint's relevant and material averments, see, e.g., Givens v. Mullikin, __ S.W.3d __, __ (Tenn. 2002), we "must construe the complaint in favor of the plaintiff, accept the allegations of fact as true, and deny the motion unless it appears that the plaintiff can establish no facts supporting the claim that would warrant relief," see, e.g., Doe v. Sundquist, 2 S.W.3d 919, 922 (Tenn. 1999).

According to the allegations of the complaint, the plaintiff was hired by Buckman in 1995 as associate general counsel in its legal department, and while working in this capacity, she reported to Buckman's General Counsel, Ms. Katherine Buckman Davis. Sometime in 1996, the plaintiff discovered that Ms. Davis, who "held herself out as a licensed attorney," did not possess a license to practice law in the State of Tennessee. The plaintiff became concerned that Ms. Davis was engaged in the unauthorized practice of law, and she discussed her suspicions with a member of Buckman's Board of Directors.[1]

Ms. Davis eventually took and passed the bar exam, but the plaintiff learned some time later that Ms. Davis had yet to complete the requirements for licensure by taking the Muti-State Professional Responsibility Examination. The plaintiff informed Buckman officials of the continuing problem, and she advised them on how best to proceed. On June 17, 1999, Ms. Davis allegedly entered the plaintiff's office, yelling that she was frustrated with the plaintiff's actions. The plaintiff responded that she also was frustrated with the situation, to which Ms. Davis remarked that "maybe [the plaintiff] should just leave." The plaintiff declined to leave, and she later received a below-average raise for the first time during her tenure at Buckman, despite having been told earlier by Ms. Davis that she was "doing a good job in position of Associate Counsel."

In August, the plaintiff sought legal advice concerning her ethical obligations, and based on this advice, she informed the Board of Law Examiners of Ms. Davis's situation. The Board later issued a show-cause order asking Ms. Davis to clarify certain facts in her bar application. Upon receipt of the order, Ms. Davis demanded to know from the plaintiff what information the Board possessed in its application file. The plaintiff stated that she knew nothing of the file, and she told Ms. Davis that her actions were threatening and inappropriate. Ms. Davis then apologized, but she immediately proceeded to schedule the plaintiff's performance review.

The plaintiff then informed Mr. Buckman and the Vice-President of Human Resources that "the situation [had become] untenable and that she could not function under those circumstances." They agreed that the plaintiff should be immediately transferred to a position away from Ms. Davis's

---

[1] This Director then requested an opinion from the Board of Professional Responsibility based on a hypothetical scenario mirroring the situation at Buckman. The Board replied that a person without a Tennessee law license may not be employed as general counsel in this state and that the failure to have such a license constitutes the unauthorized practice of law.

supervision and that she should eventually leave the company altogether within six to nine months. However, while the plaintiff was "in the midst of working out the new arrangement," Ms. Davis informed her that her services would no longer be needed. More specifically, Ms. Davis told her that "since [the plaintiff] had given her notice of resignation, it was logically best to end the Plaintiff's association with Buckman." Although the plaintiff denied that she had resigned, her computer was confiscated; she was placed on personal leave; and she was given a notice of termination.

On April 10, 2000, the plaintiff filed suit against Buckman in the Shelby County Circuit Court, alleging a common-law action for retaliatory discharge in violation of public policy. Seeking a declaratory judgment and damages, the plaintiff alleged that

> [p]rior to Plaintiff's reporting of Davis'[s] unauthorized conduct in May 1999, Plaintiff was advised by Davis that she was doing a good job in position of Associate Counsel. After learning that the Defendant [Buckman] faced possible liability, Davis began a campaign of retaliation against Plaintiff. This retaliation was based on Plaintiff's reporting of Davis'[s] unauthorized conduct to Buckman officials and the Board of Law Examiners. The retaliation culminated in Plaintiff's termination from Buckman. . . . Plaintiff's discharge constitutes blatant retaliation for complying with her ethical and statutory duties.

Buckman then moved to dismiss the complaint under Rule of Civil Procedure 12.02(6) for failure to state a claim upon which relief may be granted. On June 11, 2000, the trial court granted Buckman's motion, though its specific reasoning is not contained in the record before this Court.

The plaintiff then appealed to the Court of Appeals, which affirmed the dismissal of the complaint. The intermediate court listed three primary reasons why in-house counsel could not state a claim for retaliatory discharge in Tennessee: (1) the important public policy of regulating the practice of law "is adequately served by the existing protections of Tennessee's statutes and the Code of Professional Responsibility," and that in-house counsel does not need an action for retaliatory discharge to comply with the Disciplinary Rules; (2) recognition of such an action would "seriously impair the special relationship of trust between an attorney and his or her client" and "might have the effect of chilling the attorney-client relationship"; and (3) allowing damages as a remedy for retaliatory discharge would have "the effect of shifting to the employer the costs of in-house counsel's adherence to the Disciplinary Rules . . . ."

We then granted the plaintiff permission to appeal to decide whether in-house counsel may assert a common-law cause of action for retaliatory discharge when counsel is discharged in retaliation for reporting incidents of unauthorized practice of law. We hold that in-house counsel may indeed bring a common-law action of retaliatory discharge resulting from counsel's compliance with an ethical duty that represents a clear and definitive statement of public policy. Accordingly, the judgment of the Court of Appeals is reversed, and this case is remanded to the trial court for further proceedings.

**STANDARD OF APPELLATE REVIEW**

When reviewing a dismissal of a complaint under Rule 12.02(6), this Court must take the factual allegations contained in the complaint as true and review the trial court's legal conclusions *de novo* without giving any presumption of correctness to those conclusions. See, e.g., Doe v. Sundquist, 2 S.W.3d 919, 922 (Tenn. 1999). Moreover, because a motion to dismiss a complaint under Tennessee Rule of Civil Procedure 12.02(6) challenges only the legal sufficiency of the complaint, courts should not dismiss a complaint for failure to state a claim based upon the perceived strength of a plaintiff's proof. See, e.g., Givens v. Mullikin, __ S.W.3d __, __ (Tenn. 2002) (citing White v. Revco Discount Drug Centers, Inc., 33 S.W.3d 713, 718 (Tenn. 2000)). Instead, courts should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. See, e.g., Trau-Med of America v. Allstate Ins. Co., __ S.W.3d __, __ (Tenn. 2002).

**IN-HOUSE COUNSEL AND THE TORT OF
RETALIATORY DISCHARGE**

Tennessee has long adhered to the employment-at-will doctrine in employment relationships not established or formalized by a contract for a definite term. See, e.g., Bennett v. Steiner-Liff Iron & Metal Co., 826 S.W.2d 119, 121 (Tenn. 1992). Under this "employment at will" doctrine, both the employer and the employee are generally permitted, with certain exceptions, to terminate the employment relationship "at any time for good cause, bad cause, or no cause." See Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 574 (Tenn. 1999). This relationship recognizes (1) that employers should be free to make their own business judgments without undue court interference, see Mason v. Seaton, 942 S.W.2d 470, 474 (Tenn. 1997), and (2) that employees may "refuse to work for a [person] or company" and "may exercise [their rights] in the same way, to the same extent, for the same cause or want of cause as the employer," see Payne v. Western & Atl. R.R., 81 Tenn. (13 Lea) 507, 518-19 (1884), *overruled on other grounds*, Hutton v. Waters, 132 Tenn. 527, 544, 179 S.W. 134, 138 (1915). Indeed, this Court has noted that an employer's "'ability to make and act upon independent assessments of an employee's abilities and job performance as well as business needs is essential to the free-enterprise system.'" Mason, 942 S.W.2d at 474 (quoting Clifford v. Cactus Drilling Corp., 353 N.W.2d 469, 474 (Mich. 1984)).

However, an employer's ability to discharge at-will employees was significantly tempered by our recognition in Clanton v. Cain-Sloan Co., 677 S.W.2d 441 (Tenn. 1984), of a cause of action for retaliatory discharge. Since that time, we have further recognized that an at-will employee "generally may not be discharged for attempting to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy which is evidenced by an unambiguous constitutional, statutory, or regulatory provision." See Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716-17 (Tenn. 1997). Therefore, in contrast to the purposes typically justifying the employment-at-will doctrine, an action for retaliatory discharge recognizes "that, in limited circumstances, certain well-defined, unambiguous principles of public policy confer upon employees implicit rights which must not be circumscribed or chilled by the potential of termination." Id.

-4-

This Court has not previously addressed the issue of whether a lawyer may pursue a claim of retaliatory discharge against a former employer. At least initially, we must recognize that this case differs significantly from the usual retaliatory discharge case involving non-lawyer employees. When the discharged employee served as in-house counsel, the issue demands an inquiry into the corporation's expectations as the lawyer's sole employer and client, the lawyer's ethical obligations to the corporation, and the interest of the lawyer—in her character as an employee—in having protections available to other employees seeking redress of legal harm. Therefore, because this issue is one of first impression in this state, it is perhaps helpful to examine how other jurisdictions have addressed it.

### DECISIONS OF OTHER STATES RELATING TO DISCHARGE IN VIOLATION OF PUBLIC POLICY

Several jurisdictions have grappled with how to balance the competing interests involved in these types of cases. Although the rationales often differed, most of the earlier cases on this subject held that a lawyer could not bring a retaliatory discharge action based upon the lawyer's adherence to his or her ethical duties. See, e.g., Willy v. Coastal Corp., 647 F. Supp. 116 (S.D. Tex. 1986); McGonagle v. Union Fid. Corp., 556 A.2d 878 (Pa. Super. Ct. 1989); Herbster v. North Am. Co. for Life & Health Ins., 501 N.E.2d 343 (Ill. App. Ct. 1986). This line of cases culminated in Balla v. Gambro, Inc., 584 N.E.2d 104 (Ill. 1991), in which the Illinois Supreme Court reviewed the other cases and set forth several rationales why in-house counsel should not be permitted to assert an action for retaliatory discharge. These rationales included (1) that because "[i]n-house counsel do not have a choice of whether to follow their ethical obligations as attorneys licensed to practice law," id. at 109, lawyers do not need an action for retaliatory discharge to encourage them to abide by their ethical duties; and (2) that recognizing such an action would affect the foundation of trust in attorney-client relationships, which would then make employers "naturally hesitant to rely upon in-house counsel for advice regarding [the employer's] potentially questionable conduct." Id. at 110.

In more recent years, however, other states have permitted a lawyer, under limited circumstances, to pursue a claim of retaliatory discharge based upon termination in violation of public policy. The principal case permitting such an action is General Dynamics Corp. v. Rose, 876 P.2d 487 (Cal. 1994), in which the California Supreme Court rejected the views held by Balla and others and established an analytical framework permitting a lawyer to sue for retaliatory discharge. According to this framework, a lawyer is generally permitted to assert a retaliatory discharge action if the lawyer is discharged for following a mandatory ethical duty or engaging in conduct that would give rise to an action by a non-lawyer employee. Id. at 502-03. However, the General Dynamics Court cautioned that the lawyer bringing the action could not rely upon confidential information to establish the claim and that any unsuccessful lawyer breaching his or her duty of confidentiality was subject to disciplinary sanctions. Id. at 503.

Following California's lead, the Supreme Judicial Court of Massachusetts has also permitted in-house counsel to assert a limited retaliatory discharge action. In GTE Products Corp. v. Stewart, 653 N.E.2d 161 (Mass. 1995), the court questioned why the employee's status as an attorney should

preclude an action: "It thus seems bizarre that a lawyer employee, who has affirmative duties concerning the administration of justice, should be denied redress for discharge resulting from trying to carry out those very duties." Id. at 166 (internal quotation marks and citation omitted). However, while the Stewart Court permitted a limited retaliatory discharge action based upon a lawyer's refusal to violate "explicit and unequivocal statutory or ethical norms," it also restricted the scope of such an action to that in which "the claim can be proved without any violation of the attorney's obligation to respect client confidences and secrets." Id. at 167.

Finally, and most recently, the Montana Supreme Court also held that in-house counsel should be permitted to bring retaliatory discharge actions when necessary to protect public policy. In Burkhart v. Semitool, Inc., 5 P.3d 1031 (Mont. 2000), the court discussed the rationales in favor of adopting such an action and noted that while clients have a right to discharge counsel at any time and for any reason, this right does not necessarily apply to in-house counsel. Instead, the court reasoned that "by making his or her attorney an employee, [the employer] has avoided the traditional attorney-client relationship and granted the attorney protections that do not apply to independent contractors, but do apply to employees . . . ." Id. at 1039. Moreover, unlike the previous cases recognizing such an action, the Burkhart Court permitted lawyers to disclose the employer's confidential information to the extent necessary to establish a retaliatory discharge claim. Id. at 1041 (relying upon Montana Rule of Professional Conduct 1.6(b)(2) adopted from the ABA's Model Rules of Professional Conduct).

## REJECTION OF THE RATIONALES ADVANCED BY BALLA AND OTHER CASES

Considering these two general approaches to retaliatory discharge actions based upon termination in violation of public policy, we generally agree with the approaches taken by the courts in General Dynamics, Stewart, and Burkhart. The very purpose of recognizing an employee's action for retaliatory discharge in violation of public policy is to encourage the employee to protect the public interest, and it seems anomalous to protect only non-lawyer employees under these circumstances. Indeed, as cases in similar contexts show, in-house counsel do not generally forfeit employment protections provided to other employees merely because of their status or duties as a lawyer.[2]

Moreover, we must reject the rationales typically set forth by Balla and the Court of Appeals in this case to generally deny lawyers the ability to pursue retaliatory discharge actions. Balla's principal rationale was that recognition of a retaliatory discharge action was not necessary to protect

---

[2] For example, courts have permitted in-house lawyers to sue for age and race discrimination in violation of federal law, Stinneford v. Spiegel Inc., 845 F. Supp. 1243, 1245-47 (N.D. Ill. 1994); Golightly-Howell v. Oil, Chem. & Atomic Workers Int'l Union, 806 F. Supp. 921, 924 (D. Colo. 1992); to sue for protections under a state "whistleblower" statute, Parker v. M & T Chems., Inc., 566 A.2d 215, 220 (N.J. Super. Ct. App. Div. 1989); to sue for breach of express and implied employment contracts, Chyten v. Lawrence & Howell Invs., 46 Cal. Rptr. 2d 459, 464-65 (Cal. Ct. App. 1993); Nordling v. Northern State Power Co., 478 N.W.2d 498, 502 (Minn. 1991); and to sue based on implied covenants of good faith and fair dealing, Golightly-Howell, 806 F. Supp. at 924.

the public interest so long as lawyers were required to follow a code of ethics. Indeed, relying on Balla, the intermediate court in this case specifically concluded that statutory and ethical proscriptions are sufficient to protect the public policy against the unauthorized practice of law and that in-house counsel do not need incentives, by way of a cause of action for retaliatory discharge, to comply with the Disciplinary Rules.

We respectfully disagree that the public interest is adequately served in this context without permitting in-house counsel to sue for retaliatory discharge. It is true that counsel in this case was under a mandatory duty to not aid a non-lawyer in the unauthorized practice of law, see Tenn. Sup. Ct. R. 8, DR 3-101(A),[3] and the intermediate court was also correct that lawyers do not have the option of disregarding the commandments of the Disciplinary Rules. This is not to say, however, that lawyers can never *choose* to violate mandatory ethical duties, as evidenced by the number of sanctions, some more severe than others, imposed upon lawyers by this Court and the Board of Professional Responsibility for such violations.

Ultimately, sole reliance on the mere presence of the ethical rules to protect important public policies gives too little weight to the actual presence of economic pressures designed to tempt in-house counsel into subordinating ethical standards to corporate misconduct. Unlike lawyers possessing a multiple client base, in-house counsel are dependent upon only *one* client for their livelihood. As the General Dynamics Court acknowledged,

> the economic fate of in-house attorneys is tied directly to a single employer, at whose sufferance they serve. Thus, from an economic standpoint, the dependence of in-house counsel is indistinguishable from that of other corporate managers or senior executives who also owe their livelihoods, career goals and satisfaction to a single organizational employer.

876 P.2d at 491.

The pressure to conform to corporate misconduct at the expense of one's entire livelihood, therefore, presents some risk that ethical standards could be disregarded. Like other non-lawyer employees, an in-house lawyer is dependent upon the corporation for his or her sole income, benefits, and pensions; the lawyer is often governed by the corporation's personnel policies and employees' handbooks; and the lawyer is subject to raises and promotions as determined by the corporation. In addition, the lawyer's hours of employment and nature of work are usually determined by the corporation. See, e.g., Nordling v. Northern State Power Co., 478 N.W.2d 498, 502 (Minn. 1991) (noting reasons why an in-house lawyer should also be considered an employee). To the extent that these realities are ignored, the analysis here cannot hope to present an accurate picture of modern in-house practice. Cf. Givens, __ S.W.3d at __ (recognizing the practical reality that a lawyer's independent professional judgment may be influenced by a third party,

---

[3] Model Rule 5.5(b) imposes a similar mandatory duty: "A lawyer shall not . . . assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law."

notwithstanding the presence of specific prohibitions in the Code of Professional Responsibility against such conduct).

We also reject <u>Balla</u>'s reasoning that recognition of a retaliatory discharge action under these circumstances would have a chilling effect upon the attorney-client relationship and would impair the trust between an attorney and his or her client. This rationale appears to be premised on one key assumption: the employer desires to act contrary to public policy and expects the lawyer to further that conduct in violation of the lawyer's ethical duties. We are simply unwilling to presume that employers as a class operate with so nefarious a motive, and we recognize that when employers seek legal advice from in-house counsel, they usually do so with the intent to comply with the law.

Moreover, employers of in-house counsel should be aware that the lawyer is bound by the Code of Professional Responsibility,[4] and that the lawyer may ethically reveal client confidences and secrets in many cases. <u>See</u> Tenn. Sup. Ct. R. 8, DR 4-101(C). Therefore, with respect to the employer's willingness to seek the advice of the lawyer for legally questionable conduct, the nature of the relationship should not be further diminished by the remote possibility of a retaliatory discharge suit. In fact, "[t]here should be no discernible impact on the attorney-client relationship [by recognition of a retaliatory discharge action], unless the employer expects his counsel to blindly follow his mandate in contravention of the lawyer's ethical duty." <u>See</u> Elliot M. Lonker, General Dynamics v. Superior Court*: One Giant Step Forward for In-House Counsel or One Small Step Back to the Status Quo?*, 31 Cal. W. L. Rev. 277, 298 n.139 (1995). Therefore, we conclude that little, if any, adverse effect upon the attorney-client relationship will occur if we recognize an action for discharge in violation of public policy.

Finally, we reject <u>Balla</u>'s assertion that allowing damages as a remedy for retaliatory discharge would have the effect of shifting to the employer the costs of in-house counsel's adherence to the ethics rules. The very purpose of permitting a claim for retaliatory discharge in violation of public policy is to encourage employers to refrain from conduct that is injurious to the public interest. Because retaliatory discharge actions recognize that it is the *employer* who is attempting to circumvent clear expressions of public policy, basic principles of equity all but demand that the costs associated with such conduct also be borne by the employer.

Indeed, permitting the employer to shift the costs of adhering to public policy from itself to an employee—irrespective of whether the employee is also a lawyer—strikes us as an inherently improper balance "between the employment-at-will doctrine and rights granted employees under well-defined expressions of public policy." <u>See</u> <u>Stein</u>, 945 S.W.2d at 717 (Tenn. 1997). If anything, the "public interest is better served [when] in-house counsel's resolve to comply with ethical and

---

[4] <u>See</u> Tenn. Sup. Ct. R. 8, Preliminary Statement (stating that the Code provisions "do define the type of ethical conduct that the public has a right to expect"); <u>cf.</u> <u>Mourad v. Automobile Club Ins. Ass'n</u>, 465 N.W.2d 395, 400 (Mich. Ct. App. 1991) ("Defendants, by hiring plaintiff as an attorney, knew or should have known that plaintiff was bound by the code of professional conduct . . . .").

statutorily mandated duties is strengthened by providing judicial recourse when an employer's demands are in direct and unequivocal conflict with those duties." Stewart, 653 N.E.2d at 167.

In summary, we find unpersuasive the rationales set forth by Balla and other cases which equate the employment opportunities of in-house counsel with those of a lawyer possessing a larger client base. While in-house counsel may be a lawyer, we must further recognize that he or she is also an employee of the corporation, with all of the attendant benefits and responsibilities. Therefore, we hold that a lawyer may generally bring a claim for retaliatory discharge when the lawyer is discharged for abiding by the ethics rules as established by this Court.

*PROPER STANDARD TO APPLY IN TENNESSEE*

In Tennessee, the elements of a typical common-law retaliatory discharge claim are as follows: (1) that an employment-at-will relationship existed; (2) that the employee was discharged, (3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy. See, e.g., Reynolds v. Ozark Motor Lines, Inc., 887 S.W.2d 822, 825 (Tenn. 1994); Anderson v. Standard Register Co., 857 S.W.2d 555, 558 (Tenn. 1993); Chism v. Mid-South Milling Co., 762 S.W.2d 552, 556 (Tenn. 1988).

However, as we have noted throughout this opinion, this case does not present the typical retaliatory discharge claim. Consequently, while the special relationship between a lawyer and a client does not categorically prohibit in-house counsel from bringing a retaliatory discharge action, other courts have held that it necessarily shapes the contours of the action when the plaintiff was employed as in-house counsel. For example, the courts in General Dynamics and Stewart held that a lawyer could pursue a retaliatory discharge claim, but only if the lawyer could do so without breaching the duty of confidentiality. See General Dynamics, 876 P.2d at 504; Stewart, 653 N.E.2d at 167-68. Indeed, the California Supreme Court went so far as to forewarn lawyers that those who revealed confidential information in a retaliatory discharge suit, without a basis for doing so under the ethics rules, would be subject to disciplinary proceedings. General Dynamics, 876 P.2d at 504.

Since 1970, lawyers in this state have been subject to the Tennessee Code of Professional Responsibility, and, at least with respect to the ethical duty of confidentiality, our Code is similar to the ethical provisions relied upon in General Dynamics and Stewart. The Disciplinary Rules generally require that a lawyer not knowingly reveal the confidences or secrets of a client. See Tenn. Sup. Ct. R. 8, DR 4-101(B)(1). However, this rule is subject to some limited exceptions, including when the client consents, when compelled by law or court order, or when necessary to prevent the client from committing a crime. See DR 4-101(C). A lawyer may also reveal client confidences and secrets as a defensive measure against "accusations of wrongful conduct," though no exception permits a lawyer to reveal client confidences or secrets "offensively" to establish a claim against a client, except in fee-collection disputes. Id.

If we perceive any shortcomings in the holdings of <u>General Dynamics</u> and <u>Stewart</u>, it is that they largely take away with one hand what they appear to give with the other. Although the courts in these cases gave in-house counsel an important right of action, their respective admonitions about preserving client confidentiality appear to stop just short of halting most of these actions at the courthouse door. With little imagination, one could envision cases involving important issues of public concern being denied relief merely because the wrongdoer is protected by the lawyer's duty of confidentiality. Therefore, given that courts have recognized retaliatory discharge actions in order to protect the public interest, this potentially severe limitation strikes us as a curious, if not largely ineffective, measure to achieve that goal.

However, some courts following versions of the Model Rules of Professional Conduct have reached different conclusions concerning a lawyer's ability to use confidential information in a retaliatory discharge action. Unlike Disciplinary Rule 4-101(C), Model Rule 1.6(b)(2) permits a lawyer to reveal "information relating to the representation of a client" when the lawyer reasonably believes such information is necessary "to establish *a claim or defense* on behalf of the lawyer in a controversy between the lawyer and the client . . . ." (emphasis added). Although some commentators have asserted that this provision merely permits lawyers to use confidential information in fee-collection disputes as under the Model Code,[5] the plain language of the Model Rule is clearly more broad than these authorities would presume. In fact, at least one state supreme court has held that this language permits in-house counsel to reveal confidential information in a retaliatory discharge suit, at least to the extent reasonably necessary to establish the claim. <u>See</u> <u>Burkhart</u>, 5 P.3d at 1041 (stating that a lawyer "does not forfeit his rights simply because to prove them he must utilize confidential information. Nor does the client gain a right to cheat the lawyer by imparting confidences to him." (citation omitted)); <u>see also</u> Oregon State Bar Legal Ethics Comm., Formal Op. 1994-136 (stating that the "plain language" of a provision similar to Model Rule 1.6(b)(2) "permits disclosure [of client confidences and secrets] to establish a wrongful discharge claim" to the extent reasonably necessary to do so).

We agree with the approach taken by the Model Rules, and pursuant to our inherent authority to regulate and govern the practice of law in this state, <u>see</u> <u>In re Burson</u>, 909 S.W.2d 768, 773 (Tenn. 1995), we hereby expressly adopt a new provision in Disciplinary Rule 4-101(C) to permit in-house counsel to reveal the confidences and secrets of a client when the lawyer reasonably believes that such information is necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client. This exception parallels the language of Model Rule of Professional Conduct 1.6(b)(2), and we perceive the adoption of a similar standard to be essential in protecting the ability of in-house counsel to effectively assert an action for discharge in violation of public policy. Nevertheless, while in-house counsel may ethically disclose such information to the extent necessary to establish the claim, we emphasize that in-house counsel "must make every effort practicable to avoid unnecessary disclosure of [client confidences and secrets], to limit

---

[5] <u>See</u> 1 Geoffery C. Hazard, Jr. & W. William Hodes, <u>Law of Lawyering: A Handbook on the Model Rules of Professional Conduct</u> § 1.16:101, at 128 (2d ed. 1990 & Supp. 1996).

disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure." Model Rule 1.6 Comment 19.

*ANALYSIS OF THE COMPLAINT IN THIS CASE*

Having found that in-house counsel are not categorically prohibited from maintaining retaliatory discharge actions against their former employers, we now examine whether the plaintiff in this case has stated such a claim in her complaint. As for the first element, the existence of an at-will employment relationship, the complaint alleges only that the "Plaintiff became employed with Defendant Buckman" initially as a legal assistant and that she "began working as an attorney in Buckman's Legal Department" after becoming licensed to practice law. Although we are unable to determine from the complaint whether this employment relationship is alleged to have been at-will or based upon an employment contract, we will presume that the plaintiff intended to allege an at-will employment relationship. See, e.g., Rose v. Tipton County Pub. Works Dep't, 953 S.W.2d 690, 691 (Tenn. Ct. App. 1997) (stating that the law initially presumes that "an employee is an employee at will"). Accordingly, viewing the complaint in a light most favorable to the plaintiff, we conclude that the first element of this tort has been sufficiently alleged.

The next issue, then, is whether the complaint alleges the existence of a "clear public policy which is evidenced by an unambiguous constitutional, statutory, or regulatory provision." To establish this second element, the plaintiff argues that the ethical rules relating to the unauthorized practice of law—such as Disciplinary Rule 3-101(A), which places upon lawyers a mandatory ethical duty "not [to] aid a non-lawyer in the unauthorized practice of law"—are for the protection of the public interest and may serve as the basis for a retaliatory discharge action. We agree.

It cannot seriously be questioned that many of the duties imposed upon lawyers by the Tennessee Code of Professional Responsibility represent a clear and definitive statement of public policy. Indeed, we have previously expressly recognized that specific "provisions of the Code of Professional Responsibility, promulgated by the Supreme Court and authorized by the Tennessee Constitution and statutes, reflect public policy . . . ." Swafford v. Harris, 967 S.W.2d 319, 322 (Tenn. 1998) (addressing Disciplinary Rule 7-109(C)); see also Spiegel v. Thomas, Mann & Smith, P.C., 811 S.W.2d 528, 531 (Tenn. 1991) (addressing Canon 2 and Disciplinary Rule 2-108).

Although we need not conclude today that every provision of the Code of Professional Responsibility reflects an important *public* policy, there can be no doubt that the public has a substantial interest in preventing the unauthorized practice of law. As this Court has acknowledged, "the purpose of regulation[s] governing the unauthorized practice of law is . . . to serve the public right to protection against unlearned and unskilled advice in matters relating to the science of the law." See Burson, 909 S.W.2d at 777 (citations and internal quotation marks omitted). Further, the Court of Appeals has recognized that regulations proscribing the unauthorized practice of law are designed to protect "the public from being advised and represented in legal matters by incompetent and unreliable persons over whom the judicial department could exercise little control." Bar Ass'n of Tenn., Inc. v. Union Planters Title Guar. Co., 46 Tenn. App. 100, 126, 326 S.W.2d 767, 779

(1959) (citation omitted). As such, we find here the existence of a clear public policy evidenced by the ethical duty not to aid in the unauthorized practice of law.

To be clear, although the plaintiff was not under a *mandatory* ethical duty to report Ms. Davis's alleged unauthorized practice of law to the Board of Law Examiners, she certainly possessed a *permissive* duty to report Ms. Davis's conduct.[6] Ethical Consideration 1-3 is clear that "[a]lthough lawyers should not become self-appointed investigators or judges of applicants for admission, they should report to proper officials all unfavorable information they possess relating to the character or other qualifications of applicants." As such, given the clear expression of this permissive duty, combined with the clear expression of public policy in Disciplinary Rule 3-101(A), we hold that the complaint has sufficiently alleged the existence of a clear public policy evidenced by an unambiguous provision of the Tennessee Code of Professional Responsibility.

Next, we examine whether the complaint has sufficiently alleged that the plaintiff was discharged from her employment with Buckman. With regard to these allegations, we note that the plaintiff has asserted that she was *constructively* discharged from her position as in-house counsel. Although we have previously held that a claim of constructive discharge is not a claim in and of itself, such a claim does allege that a plaintiff's resignation was not voluntary due to the intolerable nature of the working conditions. See Phillips v. Interstate Hotels Corp. No. L07, 974 S.W.2d 680, 687 (Tenn. 1998) (plurality opinion) (citation omitted). Consequently, we now conclude that allegations of a constructive discharge are generally sufficient to establish the element of termination under a common-law action for retaliatory discharge, provided that the remaining elements of the tort are established. Cf. Campbell v. Florida Steel Corp., 919 S.W.2d 26, 34 (Tenn. 1996).

Here, we find that the complaint has fairly raised an allegation that the plaintiff did not voluntarily leave her employment with Buckman. Importantly, after her final encounter with Ms. Davis, the corporation is alleged to have removed the plaintiff's computer; to have placed the plaintiff on temporary leave; and to have given the plaintiff a notice of termination. Under these circumstances, the allegation is fairly raised that a reasonable person would have felt compelled to resign, cf. id., and we therefore conclude that the plaintiff has sufficiently alleged a termination of employment necessary to state a claim for relief.

Finally, we examine whether the complaint alleges that a substantial factor in Buckman's decision to discharge the plaintiff was her adherence to her ethical duties under the Code of Professional Responsibility. Here, the plaintiff alleges that the *sole* motivation for the constructive discharge was her adherence to her ethical duties to report the unauthorized practice of law to the Board of Law Examiners. Accordingly, we conclude that the existence of this element has likewise

---

[6] Disciplinary Rule 1-103(A) imposes a mandatory duty to report clear violations of Disciplinary Rule 1-102, which itself prohibits violations of a Disciplinary Rule. However, Rule 1-102 applies only to violations by lawyers, and because Ms. Davis was not yet licensed at the time the plaintiff reported her conduct to the Board of Law Examiners, it appears that the plaintiff's only *mandatory* duty here was to refrain from furthering Ms. Davis's application for admission to the bar under Disciplinary Rule 1-101(B).

been sufficiently alleged in the complaint and that, consequently, the plaintiff has stated a cause of action for retaliatory discharge in violation of public policy.

## CONCLUSION

In summary, we hold that in-house counsel may bring a common-law action of retaliatory discharge resulting from counsel's compliance with a provision of the Code of Professional Responsibility that represents a clear and definitive statement of public policy. We also hold that the complaint in this case, which alleges discharge for reporting the unauthorized practice of law, states a claim for relief.

Furthermore, in accordance with an Order filed simultaneously with the judgment and opinion in this case, we hold that a lawyer may ethically disclose the employer's confidences or secrets when the lawyer reasonably believes that such information is necessary to establish a claim against the employer. However, the lawyer must make every effort practicable to avoid unnecessary disclosure of the employer's confidences and secrets; to limit disclosure to those having the need to know the information; and to obtain protective orders or make other arrangements minimizing the risk of unnecessary disclosure. Accordingly, we reverse the judgment of the Court of Appeals, and we remand this case to the Shelby County Circuit Court for further proceedings consistent with this opinion.

Costs of this appeal are assessed to the appellee, Buckman Laboratories International, Inc.

_____
WILLIAM M. BARKER, JUSTICE