FILED

04/16/2019

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 15, 2019 Session

## KERRY GRAY v. SAINT FRANCIS HOSPITAL-BARTLETT, INC. A/K/A TENET HEALTHSYSTEM BARTLETT, INC. ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-002888-17      Robert Samual Weiss, Judge**

_____

### No. W2018-00836-COA-R9-CV

_____

This Tenn. R. App. P. 9 appeal arises from a wrongful death, healthcare liability action filed by the plaintiff on behalf of his deceased wife and her heirs-at-law against two hospitals and numerous healthcare providers. The dispositive issue is whether the pre-suit notices and HIPAA releases the plaintiff sent to one set of healthcare providers on December 17, 2015, and the separate pre-suit notices and HIPAA releases the plaintiff sent to a different set of healthcare providers on December 22, 2015, substantially complied with Tennessee Code Annotated § 29-26-121(a)(2)(D) and (E). If so, the commencement of the initial action in 2015 as to both sets of healthcare providers and the refiling of the action in 2017 pursuant to Tennessee's saving statute were both timely. If not, the plaintiff's claims as to all defendants are barred by the statute of limitations. The plaintiff's now-deceased wife had outpatient hernia surgery at Saint Francis Hospital-Bartlett, Inc. ("St. Francis"). Five days later, she was admitted to Methodist Hospital University ("Methodist") following several days of altered mental status with auditory and visual hallucinations where she was examined, treated, and released only to return to Methodist three days later. Following an exploratory laparotomy and other examinations and treatments, she died at Methodist a week later. The plaintiff timely sent pre-suit notices to the St. Francis providers; however, the notices only identified the St. Francis providers as potential defendants and provided HIPAA authorizations that allowed the St. Francis providers to obtain medical records, but only from the other St. Francis providers. Moreover, the pre-suit notices did not identify any Methodist providers as potential defendants. Five days later, the plaintiff sent pre-suit notices to numerous Methodist providers, which only identified the Methodist providers as potential defendants and which provided HIPAA authorizations that allowed the Methodist providers to obtain medical records, but only from the other Methodist providers. Thereafter, and relying on the 120-day extension of the statute of limitations available under § 121(c), the plaintiff filed a single wrongful death, healthcare liability action naming both hospitals and all of the healthcare providers as co-defendants. The defendants filed Tenn. R. Civ. P. 12.02(6) motions to dismiss, arguing that the plaintiff was not entitled to rely on the 120-day

extension because he did not substantially comply with the pre-suit notice requirements of § 121(a)(2)(D) and (E). Before the trial court could rule on the motion, the plaintiff voluntarily dismissed his action. Then, relying on Tennessee Code Annotated § 28-1-105(a), Tennessee's saving statute, the plaintiff refiled the action. The defendants responded by filing Rule 12.02(6) motions to dismiss, arguing that the original action and the refiled action were both time-barred because the plaintiff failed to substantially comply with § 121(a)(2)(D) and (E) prior to commencing the original action. The trial court denied the motion, ruling that the plaintiff substantially complied with the pre-suit notice statute in the original action and was thus entitled to rely on the extension under § 121(c). This Tenn. R. App. P. 9 interlocutory appeal followed. Having determined that the plaintiff did not substantially comply with the pre-suit notice requirements of § 121, we reverse and remand with instructions to dismiss all claims as barred by the statute of limitations.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and WILLIAM B. ACREE, JR., SR. J., joined.

Margaret Cooper Roney, Samantha E. Bennett, and Natalie M. Bursi, Memphis, Tennessee, for the appellants, Memphis Surgery Associates, P.C., David B. Gibson, IV, M.D., Office of Internal Medicine, P.C., Hany M. Habashy, M.D., James D. Eason, M.D., Benjamin McKinney, M.D., and Ijeoma Linda Oraedu, M.D.

Karen S. Koplon and Taylor B. Davidson, Memphis, Tennessee, for the appellant, Saint Francis Hospital-Bartlett, Inc.

Buckner Wellford and Heather Colturi, Memphis, Tennessee, for appellants Methodist Healthcare-Memphis Hospitals, a/k/a, d/b/a Methodist Hospital University and Artangela Henry, D.N.P., A.G.A.C.N.P.-B.C., F.N.P.-C.

Louis P. Chiozza, Jr. and Christopher W. Lewis, Memphis, Tennessee, and Steven R. Walker, Oakland, Tennessee, for the appellee, Kerry Gray.

**OPINION**

On November 24, 2014, Lisa Gray, wife of the plaintiff, Kerry Gray ("Plaintiff"), met with Dr. David B. Gibson, IV, at his office in Bartlett, Tennessee, to discuss

treatment for a ventral hernia.[1] Dr. Gibson approved Mrs. Gray for outpatient abdominal surgery to repair the hernia, which he subsequently performed at St. Francis on December 17, 2014, and Mrs. Gray was discharged that afternoon "without any diagnostic studies performed."

Five days after the surgery, on December 22, Mrs. Gray was admitted to Methodist with a history of five days of "altered mental status with auditory and visual hallucinations." Over the next few days, doctors and medical staff performed several diagnostic tests, including a CT scan of her abdomen and pelvis, and there were consultations with various specialists, including transplant hepatology and infectious disease. Mrs. Gray was discharged on December 29 with several diagnoses, including acute kidney injury, history of renal transplantation, splenomegaly, thrombocytopenia, and hypothyroidism.

On January 2, 2015, Mrs. Gray returned to Methodist, pale and disoriented, with substantial bruising to her lower abdomen at the surgery site. Among the diagnostic procedures and examinations performed during this stay, Dr. Kian Ali Modanlou performed an exploratory laparotomy, which revealed for the first time that Mrs. Gray was bleeding in her abdomen. Mrs. Gray's condition never improved, and she died on January 9, 2015.

On December 17, 2015, Plaintiff sent pre-suit notices pursuant to Tennessee Code Annotated § 29-26-121 to St. Francis Hospital, Memphis Surgery Associates, Dr. Gibson, and Dr. Gibson's assistant, all of whom were associated with St. Francis (collectively, "St. Francis Providers"), informing the St. Francis Providers of Plaintiff's intent to file a healthcare liability action against them. The notices identified only the St. Francis Providers as potential defendants and included HIPAA authorizations permitting the St. Francis Providers to obtain medical records from the other St. Francis Providers but no one else.

Five days later, on December 22, 2015, Plaintiff sent pre-suit notices to additional potential defendants, Methodist Healthcare-Memphis Hospitals, a/k/a, d/b/a Methodist Hospital University; Office of Internal Medicine, P.C.; Hany M. Habashy, M.D.; Artangela D. Henry, APN, FNP; James D. Eason, M.D.; Xu Zhao, M.D.; Danielle Jawoski Howell, APN, FNP; Jefferson T. Watson, M.D.; Kian Ali Modanlou, M.D.; Luis C. Murillo, M.D.; Benjamin J. McKinney, M.D.; and Ijeoma Linda Oraedu, M.D., all of

---

[1] Because this appeal arises from the trial court's decision to deny the defendants' motions to dismiss under Tennessee Rule of Civil Procedure 12.02(6), we must presume the truth of all factual allegations in the complaint and give the plaintiff "the benefit of all reasonable inferences." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31 (Tenn. 2007)). Therefore, the factual history is taken from the allegations in the plaintiff's complaint.

whom were associated with Methodist (collectively, "Methodist Providers"). The second wave of pre-suit notices identified only the Methodist Providers as potential defendants and included HIPAA authorizations permitting the Methodist Providers to obtain medical records from the other Methodist Providers but no one else.

On April 14, 2016, Plaintiff filed his original complaint naming the St. Francis Providers and the Methodist Providers as defendants, specifically, Saint Francis Hospital-Bartlett, Inc., a/k/a Tenet Healthsystem Bartlett, Inc.; Memphis Surgery Associates, P.C.; David B. Gibson, IV, M.D.; John Doe, a/k/a Joseph assistant to David B. Gibson, IV, M.D.; Methodist Healthcare-Memphis Hospitals, a/k/a, d/b/a Methodist Hospital University; Office of Internal Medicine, P.C.; Hany M. Habashy, M.D.; Artangela D. Henry, APN, FNP; James D. Eason, M.D.; Xu Zhao, M.D.; Danielle Jawoski Howell, APN, FNP; Jefferson T. Watson, M.D.; Kian Ali Modanlou, M.D.; Luis C. Murillo, M.D.; Benjamin J. McKinney, M.D.; and Ijeoma Linda Oraedu, M.D. (collectively, "Defendants").

Dr. Eason was the first to file a motion to dismiss, arguing that Plaintiff did not substantially comply with the pre-suit notice requirements outlined in § 121(a)(2)(D) and (E), because Plaintiff did not identify the St. Francis providers in the pre-suit notices sent to the Methodist Providers and the HIPAA releases did not provide access to all of the relevant medical records. Accordingly, Dr. Eason argued that Plaintiff's claims were time-barred because Plaintiff was not entitled to rely on the 120-day extension provided by § 121(c). St. Francis joined in Dr. Eason's motion, and Methodist filed a separate motion to dismiss on the same grounds. Before the court heard the motions, Plaintiff filed a notice of voluntary dismissal, and on July 8, 2016, the trial court entered an order dismissing Plaintiff's claims as to all Defendants without prejudice.

On May 5, 2017, Plaintiff sent a third wave of pre-suit notices along with HIPAA authorizations, this time to all of the St. Francis and Methodist Providers. Unlike before, the notices identified all of the potential defendants in accordance with § 121(a)(2)(D) and authorized all of them to obtain medical records from one another in accordance with § 121(a)(2)(E). Relying on Tennessee Code Annotated § 28-1-105(a),[2] Tennessee's saving statute, Plaintiff refiled his action in Shelby County Circuit Court on July 7, 2017.

---

[2] Tennessee Code Annotated § 28-1-105(a)(1) provides in relevant part:

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, . . . the plaintiff, or the plaintiff's representatives and privies, as is the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest.

Defendants responded by filing Rule 12.02(6) motions to dismiss, arguing, as they did previously, that because Plaintiff did not substantially comply with the pre-suit notice requirements in § 121(a)(2)(D) and (E) prior to commencing the original action, both the original action and the current action were time-barred.

Plaintiff countered, arguing that he did not need to provide authorization for the St. Francis Providers to obtain medical records from the Methodist Providers or, conversely, for the Methodist Providers to obtain medical records from the St. Francis Providers, because the claims against the St. Francis Providers were completely separate from the claims against the Methodist Providers.

Following a hearing on the motions, the trial court denied all of the motions to dismiss upon a determination that Plaintiff substantially complied with the pre-suit notice requirements in the original action, which afforded him the 120-day extension pursuant to § 121(c).

Defendants filed an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, which the trial court and this court granted to determine whether the pre-suit notices Plaintiff sent to the St. Francis Providers on December 17, 2015, and the pre-suit notices Plaintiff sent to the Methodist Providers on December 22, 2015, substantially complied with § 121(a)(2)(D) and (E). If so, the initial commencement of this action in 2016 and the refiling of the action in 2017 were both timely. If not, both actions were barred by the statute of limitations.

## STANDARD OF REVIEW

"A Tenn. R. Civ. P. 12.02(6) motion to dismiss challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). "The resolution of a Rule 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." *Id*. "A defendant who files a motion to dismiss 'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Id*. (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)).

When "considering a motion to dismiss, courts 'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Id*. (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31–32 (Tenn. 2007)). "A trial court should grant a motion to dismiss 'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Id*. (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). "We review the trial court's legal conclusions regarding the adequacy of the complaint de novo." *Id*.

When the defendant seeks to challenge a plaintiff's compliance with Tennessee Code Annotated § 29-26-121, Tennessee's Health Care Liability Act, the defendant must file a motion to dismiss pursuant to Rule 12.02 of the Tennessee Rules of Civil Procedure, explaining the manner in which the plaintiff has failed to comply by referring to "specific omissions in the complaint and/or by submitting affidavits or other proof." *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). Following a properly supported motion, the burden then "shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so." *Id*. Because statutory compliance is a matter of law, our review is de novo with no presumption of correctness accorded to the trial court's decision. *Id.* We review extraordinary cause under the abuse of discretion standard. *Id.*

## ANALYSIS

Tennessee Code Annotated § 29-26-121(a) "requires plaintiffs to give defendants written notice that a potential healthcare liability claim may be forthcoming," and it establishes five separate requirements to be included in the notice. *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 554 (Tenn. 2013). Of the five requirements, only two, § 121(a)(2)(D) and (E), are at issue in this case. Those subsections state that the pre-suit notice "shall include:"

> (D) A list of the name and address of all providers being sent a notice; and

> (E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

Tenn. Code Ann. § 29-26-121(a)(2)(D) to (E).

As our Supreme Court has explained, these two requirements "serve an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records." *Stevens*, 418 S.W.3d at 554. However, picture-perfect, or strict compliance with these requirements is not required:

> A plaintiff's less-than-perfect compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E) . . . should not derail a healthcare liability claim. Non-substantive errors and omissions will not always prejudice defendants by preventing them from obtaining a plaintiff's relevant medical records. Thus, we hold that a plaintiff must **substantially** comply, rather than strictly comply, with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E).

*Id*. at 555 (emphasis added).

Here, as was the case in *Stevens*, all Defendants received actual notice of Plaintiff's claim pursuant to Tennessee Code Annotated § 29-26-121(a)(1). However, until the initial complaint was filed more than two months later, the St. Francis Providers did not know Plaintiff was also asserting claims against the Methodist Providers, and the Methodist Providers did not know Plaintiff was asserting claims against the St. Francis Providers. Moreover, and significantly, neither group of providers had the means to evaluate the substantive merits of Plaintiff's claim by enabling early access to the decedent's medical records. This is significant for the following reasons:

> [T]he purpose of Tenn. Code Ann. § 29-26-121(a)(2)(E) is not to provide defendants with notice of a potential claim. Instead, **Tenn. Code Ann. § 29-26-121(a)(2)(E) serves to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records**. Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records. *See* 45 C.F.R. § 164.508(a)(1) ("a covered entity may not use or disclose protected health information without an authorization that is valid under this section"). Tenn. Code Ann. § 29-26-121(d)(1) creates a statutory entitlement to the records governed by § 29-26-121(a)(2)(E). *See* Tenn. Code Ann. § 29-26-121(d)(1) ("All parties in an action covered by this section *shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice . . .*") (emphasis added). As a result, plaintiffs cannot satisfy Tenn. Code Ann. § 29-26-121(a)(2)(E) by simply notifying defendants that a healthcare liability claim may be forthcoming.

*Stevens*, 418 S.W.3d at 555 (first emphasis added) (footnote omitted).

Nevertheless, "[n]on-substantive errors and omissions will not always prejudice defendants by preventing them from obtaining a plaintiff's relevant medical records." *Id*. Stated another way, "'[a] plaintiff's less-than-perfect compliance' with [subsection] 29-26-121(a)(2)(E) will 'not derail a healthcare liability claim' so long as the medical authorization provided is 'sufficient to enable defendants to obtain and review a plaintiff's relevant medical records.'" *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 519–20 (Tenn. 2014) (alteration in original) (quoting *Stevens*, 418 S.W.3d at 555). Thus, when a plaintiff's error actually prevents the

defendants from obtaining the medical records that are necessary for evaluating the substantive merits of the claim, the error is substantive.

Plaintiff contends he did not need to provide authorization for the St. Francis Providers to obtain medical records from the Methodist Providers, and vice versa, because Plaintiff's claims against the St. Francis Providers were separate from the claims against the Methodist Providers. Defendants insist this is not the case, and they rely, in part, on the allegations in the complaint to prove their point. For example, Plaintiff alleges in the 2016 complaint, the initial filing, in pertinent part:

21. **This is a Complaint alleging medical negligence on the part of the named Defendants, their agents, servants, employees and representatives in providing medical care, treatment and services to Plaintiff, Lisa Gray**, which said medical care, treatment and services fell below the recognized medical standard of care for Shelby County, Tennessee consisting of acts and omissions which were deviations from the standard of care **amounting to medical negligence and are the direct and proximate causes of the serious, personal injuries of the Plaintiffs and the wrongful death of Plaintiff, Lisa Gray** as will be discussed in more detail herein.

22. **Plaintiffs aver that the kind of injuries sustained by Plaintiffs would not have occurred but for the negligence on the part of the named Defendants,** Saint Francis Hospital-Bartlett, Inc., a/k/a Tenet Healthsystem Bartlett, Inc., Memphis Surgery Associates, P.C., David B. Gibson, IV, M.D., John Doe, a/k/a Joseph assistant to David B. Gibson, IV, M.D., Methodist Healthcare-Memphis Hospitals, a/k/a, d/b/a Methodist Hospital University, Office of Internal Medicine, P.C., Hany M. Habashy, M.D., Artangela D. Henry, APN, FNP, James D. Eason, M.D., Xu Zhao, M.D., Danielle Jawoski Howell, APN, FNP, Jefferson T. Watson, M.D., Kian Ali Mondanlou, M.D., Luis C. Murillo, M.D., Benjamin J. McKinney. M.D., and Ijeoma Linda Oraedu, M.D., **and their agents, servants, employees and/or representatives**.

23. **It is also believed that an agency relationship, employee-employer relationship, and/or master servant relationship existed by and between the named Defendants**, Saint Francis Hospital-Bartlett, Inc., a/k/a Tenet Healthsystem Bartlett, Inc., Memphis Surgery Associates, P.C., David B. Gibson, IV, M.D., John Doe, a/k/a Joseph assistant to David B. Gibson, IV, M.D., Methodist Healthcare-Memphis Hospitals, a/k/a. d/b/a Methodist Hospital University, Office of Internal Medicine, P.C., Hany M. Habashy, M.D., Artangela D. Henry, APN, FNP, James D. Eason, M.D., Xu Zhao, M.D., Danielle Jawoski Howell, APN, FNP, Jefferson T. Watson,

M.D., Kian Ali Mondanlou, M.D., Luis C. Murillo, M.D., Benjamin J. McKinney, M.D., and Ijeoma Linda Oraedu, M.D., **therefore any negligence, if any, on the part of the other, should be imputed to the other under the legal theory and/or doctrine of** *Respondeat Superior* **and/or principles of agency**.

(Emphasis added).

Contrary to Plaintiff's argument, the complaint reveals that Plaintiff claims that the acts and omissions of "the named Defendants," meaning all of them, "should be imputed to the other under the legal theory and/or doctrine of *Respondeat Superior* and/or principles of agency." Plaintiff also contends the acts and omissions of "the named Defendants" are "the direct and proximate causes of the serious, personal injuries of the Plaintiffs and the wrongful death of Plaintiff, Lisa Gray," asserting one claim against all named Defendants. Therefore, Plaintiff's argument that his claims against the St. Francis Providers are separate and distinct from his claims against the Methodist Providers is belied by his complaint.

The fact that Plaintiff has asserted a single claim against "the named Defendants" is significant because it is undisputed that the HIPAA releases Plaintiff provided to the St. Francis Providers in 2015 did not authorize the St. Francis Providers to obtain any medical records from the Methodist Providers. It is also undisputed that the HIPAA releases Plaintiff provided to the Methodist Providers in 2015 did not authorize the Methodist Providers to obtain any medical records from the St. Francis Providers. Nevertheless, Plaintiff contends the HIPAA releases substantially complied with § 121(a)(2)(E). They did not, and we find this contention disingenuous in light of the allegations in the complaint.

To summarize the allegations in the complaint, the St. Francis Providers performed outpatient abdominal surgery to repair Mrs. Gray's ventral hernia. She went home that afternoon. Five days after the surgery, Mrs. Gray was admitted to Methodist with a five-day history of hallucinations. She remained at Methodist for the next five days during which time, as alleged in paragraph 39 of the complaint, "[a] CT of Mrs. Gray's abdomen and pelvis was performed demonstrating edema, hematoma, free air, and free fluid. Urinalysis was performed demonstrating leukocyte esterase, a lot of white blood cells in the urine (114), and 27 red blood cells." Following multiple consultations with specialists, she was discharged on December 29, 2014, with the following diagnoses— "acute kidney injury, history of renal transplantation, metabolic acidosis, polycystic kidney disease, clostridium difficile colitis, anemia of chronic disease, splenomegaly, thrombocytopenia and hypothyroidism."

Four days later, on January 2, 2015, Mrs. Gray was again admitted at Methodist Hospital where she remained for several days while another CT scan and other

examinations were performed. On January 7, 2015, an exploratory laparotomy was performed, which was necessitated by Mrs. Gray's "circulatory arrest." The laparotomy revealed a bleed in the abdomen. Ultimately, Mrs. Gray could not be stabilized, and she died on January 9, 2015, at Methodist.

Although the complaint alleges certain specific acts and omissions of negligence to certain but not "all of the named Defendants," the complaint alleges that the negligent acts of all Defendants caused Mrs. Gray's death—the St. Francis Providers in performing the abdominal surgery and the Methodist Providers in providing post-operative emergency care. Therefore, the medical records that pertained to the abdominal surgery *and* the records concerning Mrs. Gray's post-operative care were relevant in evaluating the substantive merits of Plaintiff's claim. However, in the original action, the pre-suit notice to the St. Francis Providers only named the St. Francis providers as potential defendants, and only provided HIPAA authorizations for the St. Francis Providers to obtain medical records from other St. Francis Providers. And, the same is true for pre-suit notice and HIPAA authorizations to the Methodist Providers. Therefore, the Methodist Providers did not have access to information about the abdominal surgery, which, according to the complaint, is what brought Mrs. Gray to the Methodist Providers in the first place. And, the St. Francis Providers did not have access to information regarding Mrs. Gray's post-operative care at Methodist, which is where she ultimately died of internal bleeding.

Plaintiff's argument that he could have filed separate claims against the St. Francis Providers and the Methodist Providers is unavailing.[3] What matters here is that Plaintiff filed a civil action against all Defendants, alleging that all of the named Defendants' negligent acts and omissions collectively contributed to Mrs. Gray's death. Therefore, each defendant needed to obtain the medical records from all other potential defendants

---

[3] Plaintiff has not convinced this court that he could have filed two separate actions. To support his argument, Plaintiff cites two cases from this court, but only one of those cases, *Parker v. Portland Nursing & Nursing Rehab.*, No. M2011-02633-COA-R9-CV, 2012 WL 3776800 (Tenn. Ct. App. Aug. 30, 2012), concerns a healthcare liability action. In *Parker*, we relied on the Tennessee Supreme Court's decision in *Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011), and determined that a claim for ordinary negligence was separate from a claim for healthcare liability. 2012 WL 3776800, at \*4. *Estate of French*, however, was abrogated by statute in 2011. *See Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015) (holding that a 2011 amendment to the THCLA "establishes a clear legislative intent that *all* civil actions alleging that a covered health care provider or providers have caused an injury related to the provision of, or failure to provide health care services be subject to the pre-suit notice and certificate of good faith requirements, regardless of any other claims, causes of action, or theories of liability alleged in the complaint" (emphasis in original)). Plaintiff also cites *Doe v. Illinois State Med. Inter-Ins. Exch.*, 599 N.E.2d 983 (Ill. App. Ct. 1992); *St. Paul Fire & Marine Ins. Co. v. Hawaiian Ins. & Guar. Co.*, 637 P.2d 1146 (Haw. Ct. App. 1981); and *Wiltshire by Wiltshire v. Gov't of Virgin Islands*, 893 F.2d 629 (3d Cir. 1990), none of which support his assertion that **in Tennessee**, Plaintiff could have filed two separate healthcare liability actions.

to evaluate the substantive merits of the claim as to that defendant. Plaintiff's error actually prevented Defendants from obtaining the medical records that were necessary for evaluating the substantive merits of the claim. As a consequence, that error was substantial. *See Thurmond*, 433 S.W.3d at 519–20; *see also Stevens*, 418 S.W.3d at 555.

Plaintiff relied on the 120-day extension of the one-year statute of limitations provided by § 121(c) in the original action; however, a plaintiff is only entitled to the benefit of the 120-day extension when the plaintiff gives pre-suit notice in accordance with the statute. *See* Tenn. Code Ann. § 29-26-121(c) ("When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended . . . ."); *see also Webb v. AMISUB (SFH) Inc.*, No. W2017-02539-COA-R3-CV, 2019 WL 1422884, at *4 (Tenn. Ct. App. Mar. 29, 2019).[4] Because Plaintiff did not substantially comply with § 121(a)(2)(E), the original action was time-barred. *See Webb*, 2019 WL 1422884, at *6. As such, when Plaintiff refiled his action on July 7, 2016, following voluntary dismissal, it too was time-barred. *See* Tenn. Code Ann. § 28-1-105(a); *see also Byrge v. Parkwest Med. Ctr.*, 442 S.W.3d 245, 252 (Tenn. Ct. App. 2014) ("As Plaintiff's First Complaint was not timely filed, Plaintiff may not rely on Tenn. Code Ann. § 28-1-105 to save his cause of action."); *Dortch v. Methodist Healthcare Memphis Hosps.*, No. W2017-01121-COA-R3-CV, 2018 WL 706767, at *4 (Tenn. Ct. App. Feb. 5, 2018) (holding the trial court "properly looked to the timeliness of the First Complaint to determine whether the Second Complaint was time-barred").

For the foregoing reasons, we reverse the decision of the trial court and remand with instructions to dismiss all claims as barred by the statute of limitations.

### IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded with instructions to dismiss all claims. Costs of appeal are assessed against Kerry Gray.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[4] Plaintiff argues otherwise, but we find Plaintiff's argument to be unavailing. In *Webb*, the plaintiffs made identical arguments, and this court cited a number of cases supporting our determination that the 120-day extension is not available when the plaintiff does not substantially comply with Tenn. Code Ann. § 121(a)(2)(E). 2019 WL 1422884, at *4.