IN THE SUPREME COURT OF TENNESSEE
May 28, 2020 Session[1]

## MELANIE LEMON v. WILLIAMSON COUNTY SCHOOLS ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Williamson County**
**No. 2017-320        Joseph A. Woodruff, Judge**

_____

### No. M2018-01878-SC-R11-CV

_____

We granted permission to appeal in this case to address whether a claim for wrongful termination of employment can be asserted under the Teacher Tenure Act, Tennessee Code Annotated sections 49-5-501 to -515, by classifying a tenured teacher's resignation as a constructive discharge rather than a voluntary quit. The plaintiff tenured teacher in this appeal quit her teaching position and sued for wrongful termination under the Tenure Act. We conclude that the doctrine of constructive discharge is inconsistent with the robust procedural framework in the Act, intended to give tenured teachers ample opportunity to be heard and ensure that dismissal decisions are made methodically, with transparency, and by consensus of professional educators. We reverse the Court of Appeals' decision to apply the doctrine of constructive discharge to the plaintiff's claims, and we hold that constructive discharge is not applicable to wrongful termination claims under the Tenure Act. We affirm the trial court's dismissal of those claims. We also affirm the lower courts' dismissal of the plaintiff teacher's tort claims against the school system and individual school officials.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Affirmed in Part and Reversed in Part**

HOLLY KIRBY, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., CORNELIA A. CLARK, SHARON G. LEE, AND ROGER A. PAGE, JJ., joined.

_____

[1] We heard oral argument by videoconference under this Court's emergency orders restricting court proceedings because of the COVID-19 pandemic.

Lisa M. Carson, Franklin, Tennessee, for the Defendant/Appellant, Williamson County Schools,[2] and Defendants Kathryn Donnelly, Mike Looney, and Denise Goodwin.

Constance Mann, Franklin, Tennessee, for the Plaintiff/Appellee, Melanie Lemon.

Garrett Knisley and Benjamin Torres, Nashville, Tennessee, for Amicus Curiae Tennessee School Boards Association.

## OPINION
### FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal requires us to review a trial court's grant of a motion to dismiss, we recite the facts as alleged in the complaint, presuming them to be true and giving the plaintiff the benefit of all reasonable inferences. *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (citing *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31 (Tenn. 2007)).

Plaintiff/Appellee Melanie Lemon taught school for fourteen years. During the 2016–2017 school year, Ms. Lemon was a second-grade teacher at Walnut Grove Elementary School in Williamson County, Tennessee.

Ms. Lemon asserts that, despite the fact that she was a well-respected teacher with no history of discipline and excellent evaluations, school officials embarked on a campaign of harassment intended to coerce her into resigning from her teaching position. The harassment included false accusations that Ms. Lemon caused emotional distress to a parent and broke the law by providing student tee-shirt sizes for shirts purchased by a parent in support of a school-approved off-campus fundraiser.

After the tee-shirt incident, Ms. Lemon received unusually low evaluations, which she took as an indication that termination of her employment was imminent. Ms. Lemon reported her concerns to a union representative and to the assistant superintendent of the schools, but she did not get a satisfactory response.

---

[2] In its request for permission to appeal, Defendant/Appellant Williamson County Schools indicated its proper name is Williamson County Board of Education. The lower courts, however, referred to the Defendant/Appellant as Williamson County Schools, and the case is styled as such. Consequently, to avoid confusion, we will refer to Defendant/Appellant as Williamson County Schools in this opinion.

Subsequently, school officials told Ms. Lemon she was under criminal investigation for child abuse. Initially, she was not told the specifics of the allegations. School officials conducted an incomplete investigation into the matter, and Ms. Lemon received a three-day suspension without pay, the maximum amount of time school officials may impose a suspension without triggering appeal rights.[3] The child abuse allegations were ultimately deemed unfounded, and law enforcement declined to investigate.

When Ms. Lemon returned to the classroom following the three-day suspension, school officials placed cameras in her classroom to monitor her performance. They also assigned a retired teacher to her classroom as an observer. The superintendent of Williamson County Schools sent Ms. Lemon an email informing her that he was monitoring her actions in the classroom via the cameras. During this time period, school officials criticized Ms. Lemon for going into the hallway during class to speak with a school psychologist. Her time on the computer during class, responding to work-related emails, was timed. Ms. Lemon felt that none of these actions were warranted and were instead intended to pressure her to leave her employment.

After experiencing these events, Ms. Lemon felt she had no choice but to resign from her teaching position. She resigned on May 12, 2017.

On June 9, 2017, Ms. Lemon filed a complaint in the Williamson County Circuit Court. She named as defendants Williamson County Schools; the principal of Walnut Grove Elementary School, Kathryn Donnelly; the superintendent of Williamson County Schools, Mike Looney; and the assistant superintendent of Williamson County Schools, Denise Goodwin.

The primary claim in Ms. Lemon's complaint was for wrongful termination under the Teacher Tenure Act ("Tenure Act"), Tennessee Code Annotated sections 49-5-501 to -515, based on her allegation that she was constructively discharged. The complaint asserted other claims as well, including breach of contract, negligence, defamation, false light invasion of privacy, invasion of civil rights, and both negligent and intentional infliction of emotional distress. Ms. Lemon sought compensatory and punitive damages, including back pay, lost benefits, front pay, and compensation for her emotional distress.

In response, the Defendants filed a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss all claims. The trial court granted the motion in part; it dismissed Ms. Lemon's claims for wrongful termination, negligence, negligent infliction of emotional

---

[3] *See* Tenn. Code Ann. § 49-5-512(d) (2016).

distress, invasion of civil rights, and false light invasion of privacy, concluding that Ms. Lemon failed to state a claim upon which relief could be granted.

With respect to Ms. Lemon's wrongful termination claims under the Tenure Act, the trial court outlined the pertinent facts, stated the legal standard, and concluded that the doctrine of constructive discharge could not be applied to claims under the Act:

> Ms. Lemon contends she was wrongfully discharged when [Defendants] made her working conditions so difficult and unpleasant that she was forced to resign. In support, Ms. Lemon alleges [Defendants] falsified her observations and evaluations, giving Ms. Lemon unwarranted low scores; accused her of child abused [sic] based upon one parent's comment of an event that occurred [three] days earlier; told her it was illegal to tally t-shirt sizes of students; and reduced her to an inferior status by placing cameras in her room and assigning a retired teacher to monitor her classroom. Ms. Lemon submits the alleged conduct resulted in her constructive discharge; which Defendants achieved by subverting the process for dismissal set forth in the Teacher Tenure Act, Tenn[essee] Code Ann[otated] [sections] 49-5-501, *et seq.*

> At this point, the Court must take all of Ms. Lemon's allegations as true, and then decide whether those facts can support a claim for relief. The Court concludes they do not. The [T]eacher Tenure Act was enacted to protect school teachers from arbitrary demotions and dismissals. However, in the present matter, Ms. Lemon was neither dismissed or discharged from her position as a second grade teacher at Walnut Grove Elementary School; but rather, as she admits, Ms. Lemon resigned before these actions could occur. Likewise, the Court notes Ms. Lemon was not transferred or demoted, nor did [Defendants] reduce her pay. It is not alleged that any of the Individual Defendants verbally suggested she should resign or discussed the possibility of her employment being terminated. Instead, the facts demonstrate, outside of the three day suspension, Ms. Lemon remained in the same teaching assignment until she resigned. Upon resignation, Ms. Lemon's status as a tenured teacher was terminated, thus removing her from the procedural protections provided by the Teacher Tenure Act for tenured teachers who have been improperly dismissed. Tenn. Code Ann. § 49-5-501(11)(B)(i). Consequently, it cannot be said that Ms. Lemon was wrongfully discharged in violation of the Teacher Tenure Act.

Nevertheless, the Court acknowledges, under certain circumstances, some resignations may be coerced, thus enabling a court to grant a plaintiff relief for an involuntary resignation; however, the Court's legal research has not discovered, and Ms. Lemon has not cited, controlling law demonstrating the applicability of the doctrine of constructive discharge to the present factual circumstances. Therefore, as to Count 1, Ms. Lemon has failed to state a claim for which relief may be granted. Ms. Lemon's claim for wrongful termination is hereby **DISMISSED** for failure to state a claim on which relief can be granted, pursuant to Rule 12.02(6). Tenn. R. Civ. P.

On this basis, the trial court dismissed Ms. Lemon's claim for wrongful termination under the Tenure Act.

The trial court dismissed Ms. Lemon's claims of breach of contract, defamation, and intentional infliction of emotional distress without prejudice. It granted her leave to amend her complaint to assert those claims with greater specificity.

Ms. Lemon asked the trial court to reconsider; this request was denied. She then filed an amended complaint alleging breach of contract, intentional infliction of emotional distress, and punitive and compensatory damages.

After all of the Defendants answered the amended complaint, they filed motions for summary judgment. The trial court granted summary judgment as to the remaining breach of contract claim because it was undisputed that Ms. Lemon voluntarily resigned. Moreover, it held, Ms. Lemon failed to exhaust her administrative remedies, and the policies the Defendants allegedly violated did not apply to the facts set forth in her amended complaint.

To the extent Ms. Lemon asserted a claim of intentional infliction of emotional distress against Williamson County Schools, the trial court's order granted summary judgment against Ms. Lemon because the Tennessee Governmental Tort Liability Act did not remove Williamson County Schools' sovereign immunity.[4] The trial court granted summary judgment to the individual Defendants on the intentional infliction of emotional distress claims because the Tenure Act provides immunity to school officials when performing duties under the Act. It also concluded that the conduct alleged was not

---

[4] The record appears to indicate that claims of intentional infliction of emotional distress were brought only against the individual Defendants.

outrageous as a matter of law because it amounted to "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities."

Ms. Lemon timely appealed. Of note, the intermediate appellate court reversed the trial court's dismissal of Ms. Lemon's wrongful discharge claim under the Tenure Act. It held that the doctrine of constructive discharge could give rise to a wrongful termination claim under the Tenure Act, reasoning: "A board of education cannot violate the fundamental policies of the Tenure Act by coercing a resignation any more than it can violate the fundamental policies of any other statute by coercing a resignation." *Lemon v. Williamson Cnty. Schs.*, No. M2018-01878-COA-R3-CV, 2019 WL 4598201, at *6 (Tenn. Ct. App. Sept. 23, 2019), *perm. app. granted*, (Tenn. Feb. 20, 2020). The Court of Appeals affirmed the trial court's dismissal of the remaining claims. *Id.* at *1.

Williamson County Schools then filed an application for permission to appeal to this Court, which we granted.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Williamson County Schools argues that the Court of Appeals erred in reversing the trial court's dismissal of Ms. Lemon's wrongful termination claim because the Tenure Act does not contemplate application of the doctrine of constructive discharge.[5] It also argues that the Court of Appeals erred in holding that Ms. Lemon may recover tort damages for her wrongful termination claim under the Tenure Act and that governmental immunity does not apply to a common law claim of wrongful discharge.

On cross-appeal, Ms. Lemon maintains that the Court of Appeals was correct on the issues raised by Williamson County Schools. She also argues that the lower courts improperly dismissed her claims for negligence and intentional infliction of emotional distress.

Williamson County Schools asserts that Ms. Lemon waived these issues by failing to raise them in her answer to its application for permission to appeal to this Court. The individual Defendants argue similarly that they are not proper parties to this appeal because they did not appeal and Ms. Lemon did not seek permission to appeal the lower courts' dismissal of the intentional infliction of emotional distress claims against them. In the alternative, they assert that they retain immunity against such claims and the conduct

---

[5] Amicus Curiae Tennessee School Boards Association filed a brief in support of Williamson County Schools' appeal, making similar arguments under the Tenure Act.

alleged does not meet the standard of "outrageousness" required for claims of infliction of emotional distress.

We disagree with the position of Williamson County Schools and the individual Defendants as to waiver. Rule 11 does not require the filing of an answer to a Rule 11 application. Once we accept a Rule 11 application for permission to appeal, the entire case is before the Court, and any party may raise an issue that was previously considered by the lower courts. *See, e.g.*, Tenn. R. App. P. 13(a) advisory commission cmt. ("[O]nce any party files a notice of appeal, the appellate court may consider the case as a whole"). In this respect, we have explained:

> Parties who have not filed their own application for permission to appeal may present issues other than those presented by the appellant or party seeking Tenn. R. App. P. 11 relief. To do so, however, Tenn. R. App. P. 27(b) requires a party to include in its brief "the issues and arguments involved in [its] request for relief as well as the answer to the brief of the appellant [or party seeking Tenn. R. App. P. 11 relief]." An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7). By the same token, an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4).

*Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (alterations in original) (footnote and citations omitted); *see also* Tenn. R. App. P. 3(h) ("Consistent with Rule 13(a), cross appeals and separate appeals are not required. Consequently, upon the filing of a single notice of appeal in a civil case, issues may be brought up for review and relief pursuant to these rules by any party."); Tenn. R. App. P. 3(h) 2015 advisory commission cmt. Thus, the issues raised by Ms. Lemon in her brief to this Court are not waived.

Our standard of review for a motion to dismiss was well stated in *Webb v. Nashville Area Habitat for Humanity, Inc.*:

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss "admits the truth of all of the relevant and material allegations contained in the

complaint, but . . . asserts that the allegations fail to establish a cause of action."

In considering a motion to dismiss, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

346 S.W.3d 422, 426 (Tenn. 2011) (citations omitted) (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010); *Tigg*, 232 S.W.3d at 31; *Crews v. Buckman Lab'ys Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)).

Some of Ms. Lemon's claims were dismissed on summary judgment. We review a lower court's decision on a summary judgment motion *de novo* with no presumption of correctness. *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Our standard of review requires "a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015).

## ANALYSIS

We granted permission to appeal in this case to address whether a claim for wrongful termination of employment can be asserted under the Tenure Act by classifying the teacher's resignation as a constructive discharge rather than a voluntary quit. We analyze that issue first and then address the remaining issues raised on appeal.

### I. Constructive Discharge and the Tenure Act

It is undisputed in this case that Ms. Lemon resigned her employment as a teacher with Williamson County Schools. She maintains she was forced to resign and asserts a claim of wrongful termination under the Tenure Act by applying the doctrine of constructive discharge.

Williamson County Schools contends that application of the doctrine of constructive discharge in this case would be contrary to the express language of the Tenure Act, which provides that a teacher's tenured status ends upon resignation. Tenn. Code Ann. § 49-5-501(11)(B)(i) (2016).[6] Reading the natural and ordinary meaning of the statute's text, it argues, the Act's procedural protections are no longer available once a teacher resigns. Williamson County Schools relies heavily on the emphasis in *Thompson v. Memphis City Schools Board of Education*, 395 S.W.3d 616 (Tenn. 2012), on the elaborate procedural protections adopted as part of the Tenure Act.

Ms. Lemon's argument emphasizes the facts as alleged in her complaint—that she was an excellent teacher who was inexplicably targeted by the Defendants with a series of incidents that created intolerable work conditions and forced her to resign. Looking at the legislative intent behind the Tenure Act, she contends that the wrong or evil the Act seeks to prevent is the wrongful termination of a qualified teacher. Ms. Lemon argues that the doctrine of constructive discharge should be applicable to tenured teachers because the Tenure Act was intended to provide tenured teachers with "more protection than the average worker, not less." She says applying constructive discharge is not contrary to the Tenure Act because the Act's procedures "fail to address intentional or negligent intolerable work conditions as a means by the employer to circumvent the Act."[7]

### A. *Constructive Discharge*

Our Court of Appeals has explained the concept of constructive discharge:

> Terminating an employee triggers potentially significant legal consequences for an employer. Accordingly, employers may, on occasion, attempt an "end run" around these consequences by engaging in conduct calculated to induce an employee to quit. The doctrine of constructive discharge recognizes that some resignations are coerced and that employers

---

[6] Unless otherwise noted, we cite to the most recent version of each referenced statute.

[7] Ms. Lemon appears to argue that tenured teachers should be permitted to bring two distinct types of wrongful termination claims: first, a wrongful discharge claim under the Tenure Act for violation of its procedural provisions; and second, a common-law tort claim for wrongful discharge for violation of "substantive" provisions of the Tenure Act. She does not seek the remedies provided in the Tenure Act, such as reinstatement, but instead seeks tort damages in the form of compensatory and punitive damages. Regardless, any such wrongful termination claim would arise out of the Tenure Act, so our resolution of the question of constructive discharge makes it unnecessary for us to address Ms. Lemon's arguments on these issues.

should not be permitted to escape liability simply because they forced an employee to resign. The doctrine disregards form and recognizes that some resignations, in substance, are actually terminations.

*Walker v. City of Cookeville*, No. M2002-01441-COA-R3-CV, 2003 WL 21918625, at \*7 (Tenn. Ct. App. Aug. 12, 2003) (citations omitted).[8] Thus, constructive discharge takes place when the conduct of an employer effectively forces an employee to resign. "Although the employee may say, 'I quit,' the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation." *Turner v. Anheuser-Busch, Inc.*, 876 P.2d 1022, 1025 (Cal. 1994), *overruled in part on other grounds by Romano v. Rockwell Int'l, Inc.*, 926 P.2d 1114 (Cal. 1996)); *see Phillips v. Interstate Hotels Corp. No. L07*, 974 S.W.2d 680, 687 (Tenn. 1998) (plurality opinion).

The doctrine of constructive discharge first arose under the National Labor Relations Act and is applicable under state and federal laws prohibiting discrimination on the basis of race, color, religion, sex, or national origin. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 33–34 (Tenn. 1996). In the discrimination context, an employer may be deemed to have "discharged" an employee who resigned employment if the employee "'resigns in order to escape intolerable and illegal employment requirements' to which the employee has been subjected because of his race, color, religion, sex, or national origin." *Id.* (quoting *Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975)). Constructive discharge has also been deemed "sufficient to establish the element of termination under a common-law action for retaliatory discharge." *Crews*, 78 S.W.3d at 865. To prove constructive discharge, the plaintiff employee must show "that the employer knowingly permitted conditions of discrimination in employment so intolerable that a

---

[8] There is a second variety of constructive discharge that can apply in breach of contract cases. It "involves the demotion of executive employees who have a position-specific contract." *Walker*, 2003 WL 21918625, at \*7; *see also Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 94 (Tenn. 1999) ("[C]onstructive termination in this [breach of contract] case is distinguishable from cases where an at-will employee claims constructive discharge based upon a hostile work environment, discrimination, or some non-feasance on the part of the employer."). In the case at bar, the Court of Appeals noted that Ms. Lemon initially pled constructive discharge in support of her claim of breach of contract as well as her claim of wrongful termination, but her amended complaint "omitted all reference to constructive termination." *Lemon*, 2019 WL 4598201, at \*4. The trial court later dismissed the contract claim on summary judgment. *Id.* The Court of Appeals held that Ms. Lemon had abandoned constructive discharge related to her breach of contract claim. *Id.* Ms. Lemon has not raised that issue on appeal, so we do not address it in this opinion.

reasonable person subject to them would resign." *Campbell*, 919 S.W.2d at 34 (footnote omitted).

Constructive discharge is not a cause of action in and of itself. *Crews*, 78 S.W.3d at 865. Rather, it is a court-created doctrine applied to prevent employers from circumventing certain remedial statutes. Application of the doctrine allows an employee who voluntarily quit his or her employment to satisfy the element of termination in an otherwise viable underlying claim. *See Phillips*, 974 S.W.2d at 687 (plurality opinion) (concluding plaintiff failed to state a claim under the Tennessee Human Rights Act); *Crews*, 78 S.W.3d at 865 (holding constructive discharge allows a plaintiff to establish the element of termination for common-law action for retaliatory discharge, "provided that the remaining elements of the tort are established").

In this case, Ms. Lemon alleges she was "forced to resign when the stalking, bullying, and harassment could no longer be endured." Her resignation constituted constructive discharge, she asserts, because a reasonable person in her position would have felt compelled to resign when the school falsified an observation report, gave her unusually low scores, accused her of child abuse, and told her it was illegal to tally tee-shirt sizes. She contends she was reduced to an inferior status when cameras and a retired teacher were placed in her classroom to monitor her performance. This course of conduct, Ms. Lemon maintains, left her no choice but to resign, so her resignation should be classified as a constructive discharge instead of a voluntary quit, thus satisfying the element of termination for a wrongful termination claim under the Tenure Act.

Under the Tenure Act, Ms. Lemon contends, Williamson County Schools was permitted to terminate her employment only for incompetence, inefficiency, neglect of duty, unprofessional conduct, or insubordination, and at no time did her performance fall into any of these categories. Ms. Lemon also claims she was deprived of the notice and hearing protections of the Tenure Act.

As we have noted, the doctrine of constructive discharge has long been applied to claims under the employment discrimination statutes. *Campbell*, 919 S.W.2d at 33–34. It is not, however, universally applicable to claims under all statutory schemes. *See, e.g.*, *Practical Ventures, LLC v. Neely*, No. W2013-00673-COA-R3CV, 2014 WL 2809246, at *10 (Tenn. Ct. App. June 19, 2014) (applying Tennessee Code Annotated § 50-7-303(a) and the Tennessee Employment Security statutes) ("The doctrine of constructive discharge is inapplicable in an administrative unemployment compensation proceeding.").

- 11 -

We consider, then, whether application of the doctrine of constructive discharge is compatible with the Tenure Act.

## B. *Tenure Act*

In *Thompson v. Memphis City Schools Board of Education*, this Court set out the purposes of the Tenure Act and outlined the protections afforded to tenured teachers under the Act:

> The primary purpose of the Tenure Act is "to protect school teachers from arbitrary demotions and dismissals." The Tenure Act also affords "a measure of job security to those educators who have attained tenure status" and assures "efficient administration of the local educational systems of this State" by creating stability.
> . . . .
>
> . . . Once attained, . . . tenure extends "until such time as the teacher . . . resigns, retires or is dismissed under [the] provisions of this part." [Tenn. Code Ann.] § 49-5-501(11)(C). The Tenure Act declares in no uncertain terms that "[n]o teacher shall be dismissed or suspended except as provided in this part." *Id.* § 49-5-511(a)(1).
>
> The five exclusive "causes for which a teacher may be dismissed" are "incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination as defined in [section] 49-5-501." *Id.* § 49-5-511(a)(2). . . . [C]ertain procedures must be provided before a tenured teacher is dismissed. First, written charges must be presented to the board of education . . . . *Id.* § 49-5-511(a)(4). If the board of education determines that the "charges are of such nature as to warrant the dismissal of the teacher, the director of schools shall give the teacher" written notice of the board's decision, [and] a copy of the charges against the teacher . . . . *Id.* § 49-5-511(a)(5). The teacher then "may [. . .] demand a hearing before the board [. . .] ." *Id.* § 49-5-512(a)(1).
>
> When a teacher demands a hearing before the board, "[t]he director of schools shall [. . .] set a convenient date [. . .] ." [*Id.*] § 49-5-512(a)(2). "The teacher may appear at the hearing and plead the teacher's cause in person or by counsel." *Id.* § 49-5-512(a)(3). Additionally, the teacher "may present witnesses, and shall have full opportunity to present the teacher's contentions and to support them with evidence and argument." *Id.* at § 49-

5-512(a)(4). The teacher must be provided a "full, complete, and impartial hearing before the board [. . .] ." *Id.* . . . If an appeal is taken, a transcript or recording of the hearing must be prepared, and all actions of the board must be reduced to writing and included in the record. *Id.* § 49-5-512(a)(7). After the hearing, "[t]he board shall within ten (10) days decide what disposition to make of the case and shall immediately thereafter give the teacher written notice of its findings and decision." *Id.* § 49-5-512(a)(9). A tenured teacher "who is dismissed or suspended by action of the board" may then obtain judicial review . . . . *Id.* § 49-5-513(a)–(b).

395 S.W.3d 616, 623–24 (Tenn. 2012) (emphases removed) (footnotes omitted) (citations omitted) (quoting *Cooper v. Williamson Cnty. Bd. of Educ.*, 796 S.W.2d 176, 179 (Tenn. 1987)); *see also Emory v. Memphis City Schs. Bd. of Educ.*, 514 S.W.3d 129, 142–43 (Tenn. 2017) (discussing *Thompson* and procedures under Tenure Act).

Thus, the Court in *Thompson* outlined the panoply of procedural protections afforded tenured teachers who face dismissal. Written charges must be given to the board of education for review. Once the board approves, the teacher is given notice and may demand a hearing. A demand for a hearing triggers many procedural safeguards, including the teacher's right to testimony under oath and a written record. After the hearing, the teacher gets written notice of the board's decision and may obtain judicial review. *Thompson*, 395 S.W.3d at 623–24.

The *Thompson* Court made it clear that the procedural framework for teacher discipline in the Tenure Act is not optional; it is there to be followed. In *Thompson*, when the plaintiff tenured teacher failed to return to her duties after a lengthy medical leave, a single administrator made the decision to summarily fire her. *Id.* at 619. After the fact, the school board asserted that the teacher's failure to return to work amounted to "constructive resignation" and sought to charge her with incompetence, inefficiency, and other transgressions that would support the dismissal that had already taken place. *Id.* at 620.

In response to this argument, the *Thompson* Court did not mince words. After outlining the elaborate procedural protections for tenured teachers in the Tenure Act, the Court said: "Ms. Thompson received absolutely none of the pre-termination protections the Tenure Act provides." *Id.* at 624. Because the school board failed to provide the "first essential"—giving the teacher notice of the charges against her before terminating her employment—"a cascade of noncompliance with the Tenure Act resulted." *Id.* at 625. The Court went on: "Because no written charges were presented, the Board failed to make the

- 13 -

required preliminary determination of whether the charges, if true, would warrant Ms. Thompson's dismissal." *Id.* "In turn, because the Board made no preliminary determination, Ms. Thompson received no notice of the Board's decision and was denied her right to demand a pre-termination hearing before the Board." *Id.*

The Court in *Thompson* was unimpressed with the school board's argument that the teacher's failure to return to work was a "constructive resignation," so it was relieved of the obligation to follow the procedures in the Tenure Act for discharging a tenured teacher. The Court observed, "The term 'constructive resignation' does not appear either in the Tenure Act or in judicial decisions interpreting it." *Id.* The Court noted that a teacher's failure to return from leave may be "neglect of duty" and thus cause for termination, so the school board could have charged the plaintiff teacher with neglect of duty and "proceeded consistently with the provisions of the Tenure Act." *Id.* at 626. It added: "But no statute authorized the Board to deem Ms. Thompson's failure to return from sick leave a constructive resignation or a forfeiture of tenure that stripped her of the pre-termination protections afforded by the Tenure Act." *Id.* In short, *Thompson* held that the concept of "constructive resignation" was inconsistent with the procedures in the Tenure Act.

The school board in *Thompson* argued that the teacher was not entitled to reinstatement and back salary, as a provision of the Tenure Act provided, but was instead limited to a hearing to determine whether she should be dismissed for cause. *Id.* at 627. Too late for that, the Court said. The procedural remedies in the Tenure Act, it explained, "presuppose[] board action in compliance with the Tenure Act." *Id.* at 629 (comparing *Van Hooser v. Warren Cnty. Bd. of Educ.*, 807 S.W.2d 230, 238–39 (Tenn. 1991)). It held that the teacher was entitled to reinstatement plus full back salary, with no offset for money the teacher earned or could have earned in other employment, under Tennessee Code Annotated section 49-5-511(a)(3). *Thompson*, 395 S.W.3d at 627–30.

In *Thompson*, the school board protested that awarding the teacher full salary without offset would provide her a windfall. *Id.* at 629–30. The Court acknowledged the award to the teacher would be "considerable" but said the school board had brought the situation on itself. *Id.* at 630. The Court explained that the size of the award

> may be attributed primarily to the Board's refusal to comply with statutory mandates. The Tenure Act is carefully crafted both to afford teachers an expeditious process and to limit the liability incurred by boards of education when teachers are vindicated or reinstated. The Tenure Act has not operated as designed in this case because its requirements were ignored . . . .

- 14 -

*Id*. at 630 (footnote omitted).

Against this background, we consider whether the doctrine of constructive discharge is accordant with the Tenure Act. As outlined above, constructive discharge serves an important purpose in the context of discrimination and retaliatory discharge cases. It prevents employers from skirting claims for unlawful termination by knowingly permitting conditions of discrimination so intolerable that a reasonable person subject to them would resign. *Campbell*, 919 S.W.2d at 34.

As mentioned, Williamson County Schools argues that constructive discharge is not compatible with the Tenure Act because the Act provides that a teacher's tenured status ends upon resignation. As a result, they contend, Ms. Lemon cannot claim the protections of the Act if she resigns. *See* Tenn. Code Ann. § 49-5-501(11)(B)(i). This argument sounds superficially satisfying but ultimately is circular. After all, the employment discrimination statutes generally apply only to employees. Wrongful termination claims may generally only be asserted by employees who were terminated. Nevertheless, constructive discharge is applicable in the context of employment discrimination precisely to prevent employers from escaping liability "simply because they forced an employee to resign." *Lemon*, 2019 WL 4598201, at *5 (quoting *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 612 (Tenn. Ct. App. 2007)). The whole point of the doctrine of constructive discharge is to legally regard a resignation as a firing rather than a voluntary quit.

Next, in its rejection of the school board's claim of constructive resignation, *Thompson* observed that the term "constructive resignation" does not appear anywhere in the Tenure Act. 395 S.W.3d at 625. The same can be said of constructive discharge. This aspect of the reasoning in *Thompson* is relevant but not sufficient. The doctrine of constructive discharge is not rooted in statutory language; rather, it was judicially created to effectuate the purpose of statutes that forbid discrimination in employment, by making employer-coerced resignation the practical and legal equivalent of dismissal.

The most salient part of the reasoning in *Thompson* is its conclusion that the concept of "constructive resignation" was inconsistent with the detailed procedural framework in the Tenure Act. The Court in *Thompson* found that the school board's decision to characterize the teacher's failure to return to duty as a "constructive resignation" short-circuited the statutory procedures carefully laid out in the Act and caused it to "not operate[] as designed." *Id.* at 630.

Similarly, constructive discharge is inconsistent with the comprehensive procedural framework in the Tenure Act. The doctrine of constructive discharge sits comfortably

- 15 -

alongside the discrimination and retaliatory discharge statutes; it facilitates rather than frustrates the aims of those statutes. The same cannot be said of the Tenure Act. *Thompson* outlined the multi-layered procedures adopted in the Tenure Act, which are intended to give tenured teachers ample opportunity to be heard and ensure that dismissal decisions are made with transparency and by consensus of school administrators. Regardless of the reason for the decision, a tenured teacher who quits and then sues on the basis of constructive discharge leapfrogs over those procedures and frustrates a major aim of the Act.

In her brief, Ms. Lemon distinguishes between the "procedural portions" and the "substantive portions" of the Tenure Act, arguing that the "substantive" provisions on the causes for which a tenured teacher may be dismissed are the parts that serve "public policy." The negative inference from this argument is that the procedural aspects of the Act do not serve public policy. We disagree.

The procedural framework in the Tenure Act is carefully calibrated to give school administrators leeway to evaluate, investigate, and discipline tenured teachers when needed, all with transparency to give the teacher written reasons for the actions and create a record in the event discharge eventually occurs. Likewise, the Act references procedures for tenured teachers to follow if they disagree with the school administrators' disciplinary actions. For example, the Tenure Act provides that a tenured teacher who receives two consecutive years of evaluations of "below expectations" or "significantly below expectations" is not fired but is returned to probationary status and given an opportunity to improve. *See* Tenn. Code Ann. § 49-5-504(e) (2014).[9] Statutes also address evaluations and evaluation grievance procedure. *See* Tenn. Code Ann. § 49-1-302(d) (2016). The Act lays out step-by-step procedures to be followed if a tenured teacher is suspended for three days or less.[10] If a tenured teacher receives a suspension exceeding three days, the

---

[9] This statute provides in part:

Any teacher who, after acquiring tenure status, receives two (2) consecutive years of evaluations demonstrating an overall performance effectiveness level of "below expectations" or "significantly below expectations," as provided by the evaluation guidelines adopted by the state board of education pursuant to § 49-1-302, shall be returned to probationary status by the director of schools until the teacher has received two (2) consecutive years of evaluations demonstrating an overall performance effectiveness level of "above expectations" or "significantly above expectations." When a teacher who has returned to probationary status has received two (2) consecutive years of evaluations demonstrating an overall performance effectiveness level of "above expectations" or "significantly above expectations," the teacher is again eligible for tenure . . . .

[10] Tennessee Code Annotated section 49-5-512(d) provides:

protections include written notice of the reason for the adverse employment action, a hearing before an unbiased hearing officer, and appeal rights. Tenn. Code Ann. § 49-5-512(a)-(c) (2016).

The procedures in the Tenure Act regarding discharge of a tenured teacher, outlined at length in *Thompson*, ensure that dismissal decisions are made with involvement by several layers of educational administrators and opportunity for the subject teacher to be heard. 395 S.W.3d at 623–24. Only after those procedures have been exhausted is the teacher entitled to judicial review of the termination of employment. *Id.* at 624. From a policy perspective, this process makes certain that discharge decisions about tenured teachers are made methodically and by consensus of professional educators, and that court review of such decisions is based on a complete record reflecting the steps that led to termination. The process is intended not only to protect tenured teachers; it is also intended to benefit the public served by school administrators and teachers alike.

---

(d) Subsections (a) and (c) shall not apply to a disciplinary suspension of a teacher by the director of schools that is for a period of three (3) days or less and that is not made in anticipation of dismissal. For such suspensions of three (3) days or less, the following shall apply:

(1) The director of schools shall provide written notice of suspension and the reasons for the suspension to the teacher, along with an explanation of the evidence supporting the decision to suspend and copies of any documents relied upon by the director in reaching that decision;

(2) Upon request made in writing within five (5) days from the date of the suspension letter or the date it was received, whichever is later, the director shall provide a conference with the director at which the teacher may offer rebuttal to the charges or any information the teacher wishes the director to consider. Both the LEA and the teacher may be represented by an attorney or other representative;

(3) The meeting shall be recorded by the director of schools, and a copy shall be provided to the teacher upon request;

(4) The director shall issue a written decision within ten (10) days from the date of the conference. The director may not impose any additional punishment beyond that described in the notice of suspension; and

(5) The teacher, if dissatisfied with the decision of the director, may pursue appeal of the director's decision pursuant to § 49-5-513.

- 17 -

As explained in *Thompson*, the statutes presuppose that both school administrators and tenured teachers will act "in compliance with the Tenure Act." *Id.* at 629. All parties must do so.[11] Even if school administrators are convinced that discharge is unavoidable, they must follow the Tenure Act's procedures for discipline. Similarly, even if a tenured teacher subjected to discipline believes discharge is inevitable, the teacher must avail himself or herself of the available remedies along the way and follow the Act's procedures. As in *Thompson*, "[t]he Tenure Act has not operated as designed in this case because its requirements were ignored."[12] *Id.* at 630. Ms. Lemon did not act in accordance with the Tenure Act, and she is not entitled to rely on its provisions now.

Ms. Lemon asserts that this Court expanded application of the doctrine of constructive discharge to tenured teachers in *State ex rel. McGhee v. St. John*, 837 S.W.2d 596 (Tenn. 1992). We disagree. The Court in *McGhee* referred in passing to the teacher at issue having been "constructively discharged," but it did not apply the doctrine and did not address its application under the Tenure Act. *Id.* at 601–02. Indeed, it is clear that the teacher in that case, despite enduring considerable challenges, followed the provisions of the Tenure Act to the letter. *See id.* at 597–99.

In short, we must conclude that superimposing the doctrine of constructive discharge onto the statutory framework of the Tenure Act would be inconsistent with Act. Respectfully, we disagree with the Court of Appeals' decision to apply the doctrine to Ms. Lemon's claims under the Tenure Act and hold that constructive discharge is not applicable to wrongful termination claims under the Act.[13] Consequently, we agree with the trial court that, upon resignation, Ms. Lemon's status as a tenured teacher ended, and she was no

---

[11] We recognize that teachers and school administrators are not on equal footing; as outlined in *Thompson*, school administrators control the decisions regarding investigation, evaluation, and discipline, and teachers are left to respond to those decisions. Nevertheless, as we outline, the Tenure Act provides tenured teachers with remedies that are unavailable to typical employees-at-will, and the legislative intent is for teachers to utilize them.

[12] This is evidenced by the fact that Ms. Lemon does not even seek the remedies provided in the Tenure Act. Instead, she seeks to recover compensatory damages and punitive damages for her alleged wrongful termination. The issues she raises on appeal regarding the damages that may be recovered are pretermitted by our holding, so we decline to address them.

[13] Our holding is limited to wrongful termination claims under the Tenure Act and does not preclude tenured teachers from relying on the doctrine of constructive discharge for wrongful termination claims that do not arise under the Tenure Act. For example, a tenured teacher, like any other employee, may rely on constructive discharge to assert a wrongful termination claim under the employment discrimination statutes.

longer entitled to the protections provided by the Tenure Act for tenured teachers who have been improperly dismissed.

Accordingly, we reverse the Court of Appeals' holding on Ms. Lemon's wrongful termination claim and affirm the trial court's dismissal of that claim.[14]

## II.     Tort Claims

On cross-appeal, Ms. Lemon argues that the Court of Appeals erred in affirming the trial court's dismissal of her tort claims against Williamson County Schools and the individual Defendants, Dr. Donnelly, Mr. Looney, and Ms. Goodwin.

As to the individual Defendants, the tort claims at issue are for intentional infliction of emotional distress.  As to Williamson County Schools, the tort claim at issue is for negligence.

The trial court first dismissed the negligence claims against Williamson County Schools on the basis of sovereign immunity under the Governmental Tort Liability Act.  It dismissed the intentional infliction of emotional distress claims against the individual Defendants for failure to properly articulate the claims, but dismissed them without prejudice to permit Ms. Lemon to amend her complaint as to those claims.

After Ms. Lemon amended her complaint on the claims of intentional infliction of emotional distress, the trial court granted summary judgment against Ms. Lemon on those claims.

We consider first the predicate claims of intentional infliction of emotional distress and then the claims of negligence against Williamson County Schools.

The trial court used alternate grounds to grant summary judgment as to Ms. Lemon's intentional infliction of emotional distress claims.  As to all of the Defendants, the trial court held the allegations were insufficient as a matter of law to sustain a claim of intentional infliction of emotional distress.  In the alternative, as to the individual Defendants, the trial court held they were immune under the Tenure Act as school officials acting within the scope of their duties.

---

[14] Williamson County Schools argues the Court of Appeals erred in holding tort damages may be available to a plaintiff claiming wrongful discharge based on the Tenure Act.  Our decision on Ms. Lemon's claim for wrongful termination pretermits this issue.

The Court of Appeals affirmed the trial court's grant of summary judgment on the claims of intentional infliction of emotional distress against the individually named Defendants on the basis of the specific grant of immunity in the Tenure Act for school officials. *Lemon*, 2019 WL 4598201, at *14. It affirmed dismissal as to Williamson County Schools on grounds of sovereign immunity under the Governmental Tort Liability Act. *Id.* at *6.

We first consider whether the facts alleged in the complaint state a claim for intentional infliction of emotional distress. The elements of an intentional infliction of emotional distress claim are that "the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012).

The burden for a plaintiff to demonstrate outrageous conduct is a high burden indeed. Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1998) (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966), *abrogated on other grounds by Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996)). This Court has endorsed the "high threshold" standard stated in the Restatement (Second) of Torts:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

*Bain*, 936 S.W.2d at 622–23 (quoting *Medlin*, 398 S.W.2d at 274; Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)). The Restatement recognizes that "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably

be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." Restatement (Second) of Torts § 46 cmt. h; *see Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 704 (Tenn. Ct. App. 2012).

The Court of Appeals detailed the factual allegations in Ms. Lemon's complaint relevant to her claims of intentional infliction of emotional distress. *Lemon*, 2019 WL 4598201, at *7–10. The alleged outrageous conduct includes: disciplining and interfering with a charity attempt for a co-worker outside of school; a false and inaccurate work review; accusing Ms. Lemon of child abuse in the form of physical contact to discipline a student; placing cameras in her classroom to monitor her actions; placing a retired teacher in her classroom to do in-person monitoring; warning community members and co-workers not to speak on her behalf; telling community members Ms. Lemon would not work in the State of Tennessee if they spoke on her behalf; telling community members Ms. Lemon had anger issues; telling community members there had been allegations of child abuse; and telling co-workers who sought to speak up for Ms. Lemon to "remember who signs your paychecks."

Ms. Lemon argues this conduct meets the standard for intentional infliction of emotional distress, emphasizing community support for her after some of the allegations came to light. We disagree. The type of conduct that may constitute intentional infliction of emotional distress is illustrated by cases in which the conduct was found to have met the high legal standard for the tort. For example, in one case, the defendant estate's decedent told the plaintiff that his wife was having a seizure; as the plaintiff was calling 911 for help, the decedent shot his wife in the head, turned to face the plaintiff, put a pistol to his head, pulled the trigger, and killed himself. *See Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004). In another case, the defendant's course of conduct included death threats and gunshots fired near the plaintiff's home. *See Levy v. Franks*, 159 S.W.3d 66, 84 (Tenn. Ct. App. 2004) ("[T]here's fixin' to be a killin' in the holler."). As these cases demonstrate, the standard for intentional infliction of emotional distress "is an exacting standard." *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999).

The Restatement observes, "Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people." Restatement (Second) of Torts § 46 cmt. j. "There is no occasion for the law to intervene in every case where some one's feelings are hurt." *Id.* § 46 cmt. d. On the spectrum of behavior, the conduct alleged in Ms. Lemon's complaint skews more toward "mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Bain*, 936 S.W.2d at 622 (quoting *Medlin*, 398 S.W.2d at 274). We agree

- 21 -

with the trial court that the facts in this case do not rise to the level of outrageous conduct required for intentional infliction of emotional distress.[15]

We also agree with the lower courts that the Tenure Act immunizes school officials from liability for actions taken in furtherance of prosecutorial duties that fall under the Act. The Tenure Act provides: "The director of schools or other school officials shall not be held liable, personally or officially, when performing their duties in prosecuting charges against any teacher or teachers under this part." Tenn. Code Ann. § 49-5-512(b). This immunity is absolute and available even if the school officials who bring charges against a tenured teacher act with ill will or bad faith. *See Buckner v. Carlton*, 623 S.W.2d 102, 104–06 (Tenn. Ct. App. 1981) (holding Tenure Act provided immunity to school officials despite their false claims of misappropriation of school funds against the plaintiff and conspiracy to testify falsely during the teacher's administrative hearing), *superseded by statute on other grounds*, Act of May 24, 1984, ch. 972, 1984 Tenn. Pub. Acts 1026 (codified as amended at Tenn. Code Ann. §§ 9-8-301 to -311 (2016)), *as recognized in Hardy v. Tournament Players Club at Southwind, Inc.*, 513 S.W.3d 427, 435 (Tenn. 2017).

Here, the actions Ms. Lemon recites in her complaint were taken by the individual Defendants while Ms. Lemon was a tenured teacher with Williamson County Schools. Assuming for purposes of this appeal the truth of Ms. Lemon's allegation that their purpose was to coerce her into resigning, the Tenure Act immunized them from liability for their actions.

We also agree with the lower courts that Williamson County Schools has immunity against the claims for infliction of mental anguish. Tennessee Code Annotated § 29-20-205 provides:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
> . . . .
>
> (2) . . . infliction of mental anguish . . . .

---

[15] To the extent Ms. Lemon alleges a claim for negligent infliction of emotional distress, that claim fails for the same reason. For a claim of negligent infliction of emotional distress, "the plaintiff must prove that the conduct giving rise to his claim was so extreme and outrageous that it would have caused a reasonable person to suffer serious or severe emotional injury." *Brown*, 393 S.W.3d at 706. As a matter of law, the conduct alleged by Ms. Lemon does not rise to that level.

Tenn. Code Ann. § 29-20-205(2) (2012).  This provision immunizes Williamson County Schools against Ms. Lemon's claims of infliction of emotional distress.

Finally, Ms. Lemon's amended complaint makes generalized allegations of negligence by Williamson County Schools for failure to prevent or control the conduct of the individual Defendants.  These claims fail because, as we have explained, the predicate conduct of the individual Defendants, while perhaps unpleasant, does not rise to the level of intentional infliction of emotional distress.  To the extent that any further negligence claims against Williamson County Schools remain, they are in the nature of negligent supervision of the individual Defendants and failure to prevent their intentional actions against Ms. Lemon.  We agree with the Court of Appeals' analysis of these claims:

> When a plaintiff attempts to hold a governmental entity liable for the intentional acts of its employees, as [Ms. Lemon] does here, a direct showing of negligence by the governmental entity is required.  In other words, a governmental entity cannot be held liable for an intentional tort "absent proof of its negligent supervision."  To state a claim for negligent supervision, a complaint must allege that the defendant had notice of the wrongdoer's propensity to harm, authority to prevent the harm, and a duty of care to those who were harmed.

> While [Ms. Lemon's] negligence claims asserted that [Williamson County Schools] breached its duty to "control, direct, and train their employees," i.e., the Individual Defendants, it failed to allege facts that would show [Williamson County Schools] had notice of the intentional conduct that harmed [Ms. Lemon].  Without notice of the Individual Defendants' conduct, the risk of harm to [Ms. Lemon] was not foreseeable.

*Lemon*, 2019 WL 4598201, at *6–7 (citations omitted) (quoting *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 355 (Tenn. 2011)).  The Court of Appeals added that, to the extent Ms. Lemon alleged Defendant Assistant Superintendent Goodwin intentionally participated in the conduct that injured her, Williamson County Schools "cannot be held liable for Ms. Goodwin's negligent supervision of her own intentional conduct."  *Id.* at *7.

We agree.  We affirm the lower courts' dismissal of Ms. Lemon's negligence claims against Williamson County Schools.

- 23 -

These holdings pretermit any other issues raised on appeal.

## CONCLUSION

We reverse the Court of Appeals' holding that Ms. Lemon stated a claim for wrongful termination under the Tenure Act and affirm the trial court's dismissal of that claim. We affirm the lower courts' dismissal of Ms. Lemon's tort claims. This cause is remanded to the trial court for proceedings consistent with this opinion, and costs are assessed to Appellee, Melanie Lemon, for which execution may issue if necessary.

_____
HOLLY KIRBY, JUSTICE