IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 1, 2021

## UDO R. LIELL v. PAUL STICH

**Appeal from the Chancery Court for Davidson County**
**No. 19-1041-III      Ellen Hobbs Lyle, Chancellor**

———————————————————

### No. M2020-01071-COA-R3-CV

———————————————————

When negotiations over the sale of a boat broke down, the prospective seller and buyer sued each other. Before their claims came to trial, the parties agreed to voluntarily dismiss their claims without prejudice and to try mediation. The agreement provided that, if mediation failed, claims must be refiled within one year of the effective date of the agreement. The buyer refiled his claims against the seller just over one year after the effective date of the agreement but within one year of the dismissal of the original case. The trial court granted the seller's motion to dismiss, concluding the buyer's claims were time-barred under the parties' agreement. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which KENNY W. ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Larry L. Crain, Brentwood, Tennessee, for the appellant, Udo R. Liell.

Philip L. Robertson, Franklin, Tennessee, for the appellee, Paul Stich.

## OPINION

### I.

Udo Liell wanted to buy a boat. He saw his opportunity in a 49-foot yacht called "Seabisquit" that Paul Stich was advertising for $85,000. Mr. Liell travelled to Nashville, where the yacht was moored, and later paid Mr. Stich a deposit of $20,000 as "a show of good faith and interest."

Mr. Liell hoped to operate Seabisquit on the Great Lakes, and he preferred to accept delivery in Michigan. But, after some negotiations, the parties were unable to reach an agreement either on delivering the yacht to Michigan or on modifications to the vessel desired by Mr. Liell. So he demanded, repeatedly, the return of his deposit.

Instead of acceding to the demands, Mr. Stich sued Mr. Liell for breach of contract and demanded payment of the full purchase price. Mr. Liell counterclaimed, alleging that the parties never reached an agreement and requesting return of his deposit.

Just before the case was scheduled to go to trial, the parties agreed to mediate their claims and to dismissal of the case without prejudice. The parties signed an agreement, effective, August 22, 2018, specifying the location for the mediation, the mediator, and the time period for mediating. And, if mediation proved unsuccessful, the parties agreed to certain limitations on the filing of claims in a paragraph titled "Limits on Re-filing." Specifically, they agreed that

> ANY ACTION ARISING FROM ANY CLAIMS MUST BE FILED WITHIN THE EARLIER OF ONE (1) YEAR FROM THE DATE OF MEDIATION OR THE EFFECTIVE DATE OF THIS AGREEMENT; OTHERWISE, ALL CLAIMS SHALL BE BARRED[.] THE FOREGOING PERIOD OF TIME HEREBY IS ADOPTED BY THE PARTIES AS A CONTRACTUAL LIMITATIONS PERIOD WITH RESPECT TO ALL CLAIMS.

The agreement defined "Claims" as "those claims that were or could have been brought" in the lawsuit.

Mr. Stich and Mr. Liell filed a Joint Notice and Agreed Order of Non-Suit dismissing their respective claims without prejudice. The court entered the Agreed Order on August 29, 2018.

On August 28, 2019, Mr. Liell sued Mr. Stich. He again claimed that the parties never reached an agreement on the sale of Seabisquit and requested return of his deposit. Alternatively, if the parties did reach an agreement, Mr. Liell claimed that Mr. Stich breached it. In that event, Mr. Liell claimed that he was entitled to consequential damages in addition to the return of his deposit.

Mr. Stich moved to dismiss for failure to state a claim. *See* TENN. R. CIV. P. 12.02(6). He argued that Mr. Liell's lawsuit was time-barred as it was filed six days after the one-year anniversary of the effective date of their agreement. Mr. Liell responded that the suit was timely under Tennessee's savings statute. *See* Tenn. Code Ann. § 28-1-105(a) (2017).

The trial court agreed with Mr. Stich. The parties' agreement, the court reasoned, had clear and explicit language that the savings statute was not intended to apply. Because Mr. Liell's second lawsuit was not filed within the time specified in the agreement, the court granted Mr. Stich's motion to dismiss under Rule 12.02(6).

## II.

A Rule 12.02(6) motion "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). In ruling on a 12.02(6) motion, courts examine only the pleadings. *Id.* They "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31 (Tenn. 2007) (citation omitted). A 12.02(6) motion should be granted "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002). Whether a 12.02(6) motion was properly granted is a question of law, which we review de novo. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999).

On appeal, Mr. Liell maintains that the savings statute supersedes the parties' agreement. As relevant here, the savings statute allows a plaintiff to refile a lawsuit within one year of the voluntary dismissal of the initial lawsuit, provided that the initial lawsuit was timely. *See* Tenn. Code Ann. § 28-1-105(a); *McGee v. Jacobs*, 236 S.W.3d 162, 165 (Tenn. Ct. App. 2007) (holding that an action may be refiled under the savings statute within a year of voluntary nonsuit). The savings statute "is remedial and should be liberally construed." *Woods v. Palmer*, 496 S.W.2d 474, 475 (Tenn. 1973). But, as Mr. Liell acknowledges, parties can contract around the savings statute. *See Circle C Constr., LLC v. Nilsen*, 484 S.W.3d 914, 921 (Tenn. 2016). Mr. Stich argues that he and Mr. Liell did so here.

To determine who is correct, we must interpret the parties' settlement agreement. A "cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). To do so, we look to the "usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Contract interpretation presents a question of law, which we review de novo. *Allmand v. Pavletic*, 292 S.W.3d 618, 624-25 (Tenn. 2009).

To circumvent the savings statute, parties "must include clear, explicit language . . . to that effect." *Circle C*, 484 S.W.3d at 921. Without an "explicit indication that the parties intend to circumvent the savings statute, it will normally apply." *Id.* Our supreme court recently held that an agreement with a filing deadline did not replace the savings statute. *See id.* at 920-21. In that case, the parties made the agreement before any claims were

3

filed. *Id.* at 916. One party then filed suit before the agreement's deadline, voluntarily dismissed the suit, and refiled it. *Id.* The refiling, like here, was timely under the savings statute but too late under the agreement's deadline. *Id.*

The savings statute applied to save the refiled lawsuit. *Id.* at 921. The parties' agreement did not set a filing deadline. It only extended the statute of limitations. *See id.* at 920 ("The agreement created no new contractual limitation period; rather, it paused and extended the applicable statute of limitations."). So the object of the agreement was to allow the suing party more time to bring the initial lawsuit. *See id.* at 919. The agreement did not limit—or even contemplate—refiling under the savings statute. *See id.*

Here, by contrast, Mr. Liell and Mr. Stich's settlement agreement did not extend the statute of limitations. Claims were already filed when they made the agreement. The object of the agreement was to limit the refiling of claims, not their initial filing. The savings statute normally governs the refiling of claims. *See id.* ("A savings statute allows a case . . . to be refiled within a set period . . . ."); *Rayburn v. Bd. of Prof'l Responsibility*, 300 S.W.3d 654, 663 (Tenn. 2009) (reasoning that "[t]he savings statute . . . permits a plaintiff . . . to refile within a year" of voluntary nonsuit); 54 C.J.S. *Limitations of Actions* § 347, Westlaw (database updated Oct. 2021) ("[A] savings statute permits an action . . . to be refiled within a specified period of time."); 51 AM. JUR. 2D *Limitation of Actions* § 251, Westlaw (database updated Aug. 2021) (explaining that savings statutes allow a plaintiff to "refile the original action at some later date"). By setting their own limits on refiling, Mr. Liell and Mr. Stich provided a clear, "explicit indication that [they] intend[ed] to circumvent the savings statute." *See Circle C*, 484 S.W.3d at 921.

Mr. Liell contends that, to bypass the savings statute, "parties must specifically state" that the "savings statute is not intended to apply."[1] We disagree. The savings statute applies "in the absence of any evidence of contrary intention." *Id.* at 919. The parties' agreement to set their own time limit for refiling suit evidences a clear intention to circumvent the savings statute's usual time limit.

## III.

The parties' settlement agreement contained clear and explicit language that the savings statute was not intended to apply. Because Mr. Liell did not comply with the agreed refiling limit, his lawsuit is time-barred. He is not entitled to relief on any set of

---

[1] Mr. Liell also contends that mediation, which never occurred, was a condition precedent to the refiling limitation. But the ship sailed on that argument when he failed to include it in his opening brief. Because he first raised the argument in his reply brief, we need not consider it. *See Denver Area Meat Cutters & Emp'rs Pension Plan v. Clayton*, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006) (explaining that an appellant cannot "advance a new argument to support an issue in the reply brief").

facts.  *See Crews*, 78 S.W.3d at 857.  So we affirm the trial court's dismissal of his lawsuit for failure to state a claim.


    s/ W. Neal McBrayer
W. NEAL MᴄBRAYER, JUDGE